HASLETT's Adm'r. *D. B. N. vs.* GLENN.—December, 1825.

An executor cannot make the property of his testator his own, by paying the debts of the testator out of his own funds to the amount of the appraisement of his estate.

An executor's having settled an account of his administration with the orphans court, and being charged by that court with the appraised value of the estate according to the inventory, is not conclusive evidence that he had fully administered the effects of the deceased, and that thereby they became his right.

The act of limitations is no bar in an action of trover, where the conversion of the property of a deceased person was before letters of administration were granted to the plaintiff, but at a time when there was no person to assert the rights of the creditors and legatees of the deceased. The statute begins to operate only from the time a right to demand the property vests in some one.

Where land had been purchased and conveyed in trust for a husband and his wife during their joint lives, and the life of the survivor of them, and the crops growing on the land at the death of the husband were sowed or planted by the vendor of the land before he conveyed, such crops, as emblements, survived to the wife under the trust deed, and made no part of the husband's personal estate. But if the land had been sowed or planted by the husband after his purchase, it had been otherwise.

APPEAL from *Baltimore* County Court. This was an action of *trover*, brought on the 12th of March 1822 by *James Smith*, administrator *de bonis non*, with the will annexed, of *William W. Haslett*, (now appellant,) against the appellee, (the defendant below.) *Not guilty*, and *actio non accrevit infra tres annos*, were pleaded. Issue was joined to the first plea, and the general replication and issue to the second. The facts of the case sufficiently appear in the statement of the judge, who delivered the opinion of this court.

The cause was argued at the last term before BUCHANAN, Ch. J. and EARLE, STEPHEN and DORSEY, J.

*S. J. Donaldson* and *Belt*, for the Appellant, contended, 1. That an executor cannot become the purchaser of the goods and chattels of his testator, nor by any other means whatever acquire a property therein other than as executor; and that if an executor had such power, there was no evidence in the cause to prove an exercise of that power by the executrix, *Ann Haslett.* 2. That where an executor dies possessed of goods and chattels, the property of his testator, and leaves them unadministered, they immediately, upon his death, vest in the administrator *D. B. N.* whensoever afterwards administration may be granted. 3. That the sale made by the appellee in this cause was an actual conversion, and that it was not incumbent upon the appellant to prove a demand and refusal.    4. That although the administrator *D. B. N.* is by relation possessed of property unadministered by the executor from the moment of the executor's death, yet that for any injury to the property done, between the time of his death and the grant of administration, the act of limitations begins to operate from the time of administration granted, and not from the time when the injury is done. 5. That upon the death of tenant for life all crops then growing become assets in the hands of his executor.

On the *first* point, they cited the act of 1798, *ch.* 101, *sub ch.* 8, *s.* 2, 3, 19; *sub ch.* 14, *s.* 9.   *Toller*, 238.   *Conway vs. Green*, 1 *Harr. & Johns.* 151.   *Scott vs. Burch*, 6 *Harr. &c Johns.* 67.   *Hall vs. Griffith*, 2 *Harr. & Johns.* 483.   The act of 1816, *ch.* 203.   3 *Blk. Com.* 18.

On the *second* point—1 *Com. Dig.* tit. *Administration*, (B 10) 341.   3 *Bac. Ab.* tit. *Executor & Administrator*, (H 1) 58.   *Anon. Comb.* 304.   *Anon. Ibid* 451.   *Long vs. Hebb*, *Styles' Rep.* 341.

On the *third* point—6 *Bac. Ab.* tit. *Trover*, 677, 679. 1 *Chitty's Plead.* 78.

On the *fourth* point—*Sewell vs. Hepburn*, 4 *Harr. & Johns.* 393.   *Hodsden vs. Harridge*, 2 *Saund.* 63, g. *(note.)*   *Curry vs. Stephenson*, *Comb.* 311.   S. C. 2 *Salk.* 421.   *Parker vs. Fassitt*, 1 *Harr. & Johns.* 339. 1 *Com. Dig.* tit. *Actions*, &c. (H 6) 221.

On the *fifth* point—1 *Cruise's Dig.* 87.   The acts of 1798, *ch.* 101, *sub ch.* 6, *s.* 12, *sub ch.* 7; 1802, *ch.* 101, *s.* 2; and

3 *Bac. Ab.* tit. *Joint Tenants*, 675, 692. Ibid tit. *Executors*, &c. (H 3) 64. *Latham vs. Atwood, Cro. Car.* 515.

*Glenn* and *R. Johnson*, for the Appellee, on the *first* and *second* points cited 1 *Com. Dig.* tit. *Administration*, (B 10) 341. 3 *Bac. Ab.* tit. *Executor*, (H) 58. *Livingston vs. New-kirk*, 3 *Johns. Chan. Rep.* 318. The act of 1798, *ch.* 101, *sub ch.* 15, *s.* 1. *Toller*, 252. The act of 1798, *ch.* 101, *sub ch.* 8, *s.* 3, *sub ch.* 10, *s.* 1; *sub ch.* 14, *s.* 2. *Quick vs. Staines*, 1 *Bos. & Pull.* 293. *Farr vs. Newman*, 4 *T. R.* 625, *(note.)*

On the *third* point—6 *Bac. Ab.* tit. *Trover*, (C) 683.

On the *fourth* point—*Sewell vs. Hepburn*, 4 *Harr. & Johns.* 393. The act of 1715, *ch.* 23.

On the *fifth* point—the acts of 1798, *ch.* 101, *sub ch.* 7; 1802, *ch.* 101, *s.* 2; 1807, *ch.* 136, *s.* 1. 3 *Bac. Ab.* tit. *Executor*, 98. *Hambly vs. Trott*, 1 *Cowp.* 373. *Toller*, 365. 1 *Com. Dig.* tit. *Administration*, (C 3). 2 *Blk. Com.* 508.

*Curia adv. vult.*

At this term the opinion of the court was delivered by

EARLE, J. The following is a full statement of the facts of this case. On the 25th of April 1814, Doctor *William W. Haslett*, late of *Baltimore*, made his will, and died a few days after. A little previous thereto, he had purchased a plantation of *John Heslip*, and obtained a conveyance of it from him to *John Miller*, and his heirs, in trust for the use of himself and his wife, *Ann Haslett*, for and during their joint natural lives, and the life of the survivor of them, and after the death of the survivor of them, to the use of the heirs of his said wife, for-ever; and by his will he ratified and confirmed the title to said property to his said wife, her heirs and assigns, forever. The crops growing on the land at the testator's death, were sowed or planted by *Heslip*. After manumitting his slaves, and giving some small legacies, he bequeathed also to his wife a third of his personal estate, and gave the remaining two thirds to his sisters, *Elizabeth Ramsay* and *Mary Hood*, forever, and di-rected the division to be made after the payment of all his debts. He appointed his wife executrix of his will, which trust she accepted, and under the direction of *Elias Glenn*, esquire, the appellee in this cause, who appears to have acted a kind and

friendly part towards the doctor and his family, she applied her-
self to the settlement of his estate. The will was proved on
the 14th day of May 1814, and the 4th day of June following,
she returned an inventory of his effects, amounting to $1970 67.
On the 14th of the same month the executrix passed her first
account with the orphans court, in which she charges herself
with the amount of the inventory, with a debt received of *Elias
Glenn,* of $237 34, and with a personal chattel, not included
in the inventory, to the amount of $6, making an aggregate
sum of $2214 01, and obtained an allowance for payments, dis-
bursements and commissions, amounting to $1615 27, leaving
a balance against her of $598 74. She does not appear to have
done any thing more towards her administration, unless holding
possession of all her husband's effects may be so considered,
until her death, which took place the 12th of September fol-
lowing. She left a will, and by it devised all her property,
real, personal and mixed, to her two nieces *Willmina* and *Ju-
lian Stewart,* their heirs and assigns, forever, subject to and
charged with the payment of her funeral expenses, debts and
legacies, and appointed her friend *Elias Glenn,* her executor.
He proved her will in the same month of September, and re-
turned an inventory of her estate, including all the articles of
her husband's personal estate appraised by her. It is admitted
that the same goods and chattels were sold by him at auction
soon after, and by his account of sales, returned to the orphans
court, it appears they brought the sum of $3554 66, overrun-
ning the inventory she returned, with the chattels she accounted
for, the sum of $1578 93½. In December he passed his first
account as executor of her estate, and charged himself with the
amount of the inventory returned by him, $2796 05, with the
difference between the sales and appraisement $768 61¼, and
with cash in his hands $98 62½, making the amount of debits
$3653 29¼. He paid funeral expenses, debts, legacies, &c. to
the amount of $2139 13, and having obtained in his account
an allowance for them, there was left in his hands $1514 16.
This sum he charged himself with in his last account, passed at
the 1st of December 1819, and reduced it by further payments
and disbursements to $468 58, which he admitted to be in his
hands undisposed of. At the same time he passed a further

account of the estate of Doctor *Haslett,* calling it the second account of *Ann Haslett,* executrix of *William W. Haslett,* rendered by him as her executor.   In this settlement he charges himself with $598 74, the balance due on her first account, and is allowed for a payment to the register of $1 50, and her third part of her residuum of her husband's estate to the amount of $199 03, making together $200 58, and leaving no more to be accounted for than $398 16.   No part of the legacies of the two sisters of the first testator is alleged to be paid, and why they have stood off, and not asserted their rights, does not appear.   The appellant, however, who will be accountable to them for their proportion of what he receives, after having paid the debts, if any remain to be paid, obtained letters *de bonis non* on the estate of *William W. Haslett* on the 21st July 1821, and brought an action of trover in less than a year thereafter. The appellee, the defendant below, pleaded to it the general issue plea, and that the causes of action did not accrue at any time within three years next before the day of the institution of the suit, to which last plea there is a general replication.

There has grown out of these facts several questions of law, which have been discussed in this court with ability, and now await its decision.

The most important among them respects the situation, in a legal view, of the goods and chattels of *William W. Haslett,* taken by the executor of his wife into the administration of her estate—Whether at the time of her decease in September 1814, she was possessed of them in *auter droit,* or had acquired such a right to them, as made them transmissible to her executor? If she had not acquired such a right to them, it is manifest the legatees of the first testator have been injured by the mode of settlement adopted, in the proportion the legatees under the wife's will have been profited by it—the $1578 03½, the gains of the second appraisement, and sales on the first appraisement, having been taken from one set of legatees, and given to the other.   The appellee, we are certain, stood indifferent to them both, and if an error has been made in his settlement, we are perfectly sensible it has proceeded wholly from a mistaken apprehension of his duty.   To establish the position that the wife made the property of her husband her own in her lifetime, it

was contended by the appellee, that she paid the debts of her testator, out of her own funds, to nearly the amount of the appraisement of his estate; that she settled an account of her administration with the orphans court, and was charged by that court with the appraised value of the estate only; and that she had fully administered his effects, and thereby they became her right.

: We are of opinion, that neither of the grounds are tenable in this case, and that the position taken is not sustained.

The first is directly opposed to the decision of this court, in the case of *Hall vs. Griffith,* 2 *Harr. & Johns.* 483, where it is decided in so many words, that the appellant, the administrator *de bonis non* in that case, had no right to retain the personal estate at the appraisement on his paying the debts of the deceased to the amount of the inventory. He had been for many years in the administration of the estate, had overpaid the creditors the amount of the inventory, and considered the property his own, and yet he was compelled, by a decree of the orphans court, sanctioned by the opinion of this court, to sell the negroes, and their increase, with the other property, and account to the representatives for the amount of sales. *Ann Haslett* lived about four months only after she took letters testamentary, and it is impossible to say in what light she considered her husband's property in her possession, or what steps might have been taken against her by the creditors or legatees; but we must be allowed to believe, that if a proceeding had been had to compel her to sell, and account for the excess of sales over the appraisement, the ultimate result would have been the same as in the case we have mentioned, upon the principle, that she held and possessed for others, who were entitled to the utmost advantage that could be made of the property. The payments and disbursements she had made *bona fide* towards the settlement of her testator's estate, as well as her own rights derived to her from his will, would unquestionably have been respected in the settlement, superinduced by the proceeding, and suitable allowance would have been made for her trouble and expense in performing her trust. And all these things would doubtless have been equitably accorded to the appellee by the orphans court, if on the death of *Ann Haslett* he had called on the

creditors or legatees to take letters of administration *de bonis non*, or had taken them himself, and separated the estates with the aid and advice of that court.

The second ground taken by the appellee's counsel is not more sustainable than the first. The settlement of the account on the 14th of June 1814 with the orphans court, in which the executrix is charged with the amount of the appraisement, according to the inventory, concludes the rights of no person. Such settlements have been determined by this court to be right *prima facie* only, and not to be conclusively binding on persons not parties to them, and who have not had an opportunity of appealing from them. *Spedden vs. The State, use of Marshall and wife, 3 Harr. & Johns.* 251, and the cases there cited. The account immediately under our consideration was moreover stated in the manner it is, under the authority of the act of 1798, *ch.* 101, *sub ch.* 10, *s.* 1, and was not intended to express or imply an opinion of the court in relation to the ownership of the property; but if so intended, the court's judgment, authorising the executrix to retain the property as her own, at the appraised valuation, is not conclusive on the legatees of *William W. Haslett,* for the reasons mentioned in the case referred to. The point is not directly decided in the before mentioned case of *Hall vs. Griffith,* but the court could not well have arrived at the legal conclusions drawn by them, if it had been their opinion, that a settlement by the inventory changes the character of the property appearing in it; for it was an admitted fact in the cause, that the administrator *de bonis non* had passed an account, by which it was apparent he had overpaid the appraised value of the estate considerably.

After what has been said, it seems superfluous to declare our opinion, that the executrix, *Ann Haslett,* did not fully administer the estate of her testator, in her lifetime, and that there was a necessity for an administration *de bonis non.* If it is meant that a final account in the orphans court is the best evidence of a full administration, without enquiring into the strength of the proposition, we answer, that no such evidence is to be found in the record before us. The account passed by the executrix in her lifetime, has none of the characteristics of a final account, and the account passed after her death by her executor, was wholly unauthorised by the act of 1816, *ch.* 203.

There are but two items in this last mentioned account, and neither of them relate to the acts, payments or disbursements of the executrix, in her lifetime.

Another question of law discussed before this court, and which we have to decide, arises on the plea of limitations. It was argued, that the action in this case is barred by length of time, as much as six years, if not more, having intervened between the alleged conversion, and the institution of the suit, and that on this score the court below were right in the general instructions given by them to the jury. The argument was met on the part of the appellant with the case of *Hepburn, administrator of Fishwick, vs. Sewell,* which was asserted to be an exactly similar case, and to put an end to the question. We have examined *Hepburn and Sewell,* and compared it with the facts in the record, and are of opinion that it is not an apposite case; but we nevertheless think that this action is not barred by the statute of limitations. In the case referred to, no tortious act was imputed to *Sewell* before letters of administration were obtained by *Hepburn,* and the wrongful conversion complained of was evidenced by a demand and refusal subsequent to the accrual of the right to sue. Here the alleged appropriation and conversion of the property by *Glenn* was long before the letters *de bonis non* were granted to *Smith,* but at a time when there was no person to assert the rights of the creditors and legatees of the deceased *William W. Haslett*; and the court have no doubt, that the statute begins to operate only from the time a right to demand the thing in question vests in some one. It is like the common case of a simple contract creditor dying before his debt becomes due, which his administrator may recover, although more than three years have elapsed from the day of payment to the date of the letters, provided a suit is brought within three years after the date of the letters. Laches cannot be imputed where there is no one to sue, and the cause of action accrue only in a case such as this, from the time there is a competent person to bring it.

A further question was moved in this cause by the appellant's counsel, about which, it appears to us, they were clearly wrong. They contended that the executrix, *Ann Haslett,* ought to have brought into the administration of her husband's estate the

crops growing on his land at the time of his decease. The point is, whether, as emblements, they survived to the wife under the trust deed, or made a part of the husband's personal estate? And we decidedly think, that as the crops were sowed or planted by the vendor, *John Heslip*, before he sold to *Haslett*, they went with the land to *Ann Haslett*, who out-lived her husband, and became tenant in fee of the trust estate, the emblements partaking of the nature of the land in this instance, and going with it. It had been otherwise, if the land had been sowed or planted by the husband after his purchase, and the reason is, that the seed committed to the earth by him would not have been cultivated by a joint stock, but would have been entirely and exclusively his property, and be considered in the same situation as if sown in the land of the wife only.

This case has been deliberately considered by us, and we must entertain the opinion, that the court below erred in their instruction to the jury.

We reverse the judgment, and send the cause back under a *procedendo.*

*JUDGMENT REVERSED,* &c.