(Decided 12th January, 1871.)

MARGARET SMITH *vs.* JOHN DOE, *ex dem.*, J. UPSHUR DENNIS, Adm'r *d. b. n. c. t. a.* of H. CONNER.

*Void bequest—Incomplete administration—Plea of Limitations in an Action of Ejectment.*

H. Conner bequeathed certain leasehold property to his wife for life, and after her death, to her son for his life, and after his death to an illegitimate son of the testator absolutely. The legatee in remainder was a slave for life, and not the property of the testator. The wife of the tes-

tator was appointed the sole executrix, and as such, obtained letters testamentary upon her husband's estate and returned an inventory thereof, but never settled an account in the Orphans' Court. She paid all the debts of the estate, however, and took possession of the property as legatee under the will, and continued such possession until her death, "without having made any other transfer, conveyance, sale or distribution of the same, or having obtained any order of the Court therefor, either as executrix or otherwise." Upon her death, her son took possession of the leasehold premises, and continued in possession until August, 1822, when he sold all his right therein to S, who took possession, and in December following, conveyed his interest therein to C, who took possession and retained it until his death. Upon his death, his executor took possession of the premises as part of the estate of his testator, and held the same until they were assigned to the defendant as a distributive portion of said estate. H. Conner left next of kin. The second tenant for life died more than twenty years previous to June, 1869, when letters of administration *d. b. n. c. t. a.* on the estate of H. Conner were granted to the plaintiff's lessor, who, after obtaining such letters, made demand for the premises, and was refused. In an action of *ejectment* by him to recover the premises, it was HELD:

1st. That the bequest of the residuary interest in the premises failed, the legatee being a slave, and not belonging to the testator, and such interest, after the expiration of the estates of the two life-tenants, remained undisposed of, and formed part of the testator's estate for distribution to his next of kin.

2d. That such *residuum* was a proper subject for an administration *de bonis non*, and vested in the administrator upon the grant of such letters.

3d. And as there was no person in being capable of suing after the termination of the last life estate, until the grant of letters to the lessor of the plaintiff, the Statute of Limitations did not bar.

APPEAL from the Superior Court of Baltimore City.

The cause was argued before BARTOL, C. J., BRENT, MAULSBY, MILLER, ALVEY and ROBINSON, J.

*Bernard Carter*, for the appellant.

The estate of Hannibal Conner was fully administered by his widow and executrix, Sybil Conner, she having paid off the debts of the estate and taken possession of the premises in controversy, and of the other estate devised and bequeathed

to her as legatee under said will, and so continued in possession thereof until her death, when the second life-tenant, Lloyd Gibbs, took possession of the said property as legatee under said will.

There was, therefore, nothing to require an administration *d. b. n.*, and the plaintiff's lessor, in this case, took no title to the property in controversy. *Alexander vs. Stewart*, 8 *Gill & John.*, 241; *Alexander vs. Riston*, 2 *G. & J.*, 99; *Gardner & Hughes vs. Simmes*, 1 *Gill*, 428; *Lemmon vs. Hall*, 20 *Md.*, 169.

The next of kin, upon the death of the second life-tenant, was entitled to the possession and enjoyment of the property, and had the right to bring any action which was necessary to obtain possession thereof from Frederick Cook, the grandfather of the appellant, who was then in adverse and exclusive possession thereof, claiming it as his own. *Binnerman vs. Weaver, et al.*, 8 *Md.*, 517; *Williams vs. Holmes*, 9 *Md.*, 281; *Hewitt's Case*, 3 *Bland*, 185; *Coward vs. Worrell*, 7 *G. & J.*, 475; *Kent vs. Sommervell*, 7 *G. & J.*, 272.

No deed was necessary to vest title in the next of kin of H. Conner.

More than twenty years having elapsed from the death of Lloyd Gibbs, the second life-tenant, before the institution of this suit, and there being at his death a person in being, (Henrietta Williams, the next of kin,) capable of instituting an action for the recovery of possession of said property, the adverse and exclusive possession of the appellant and her grandfather, F. Cook, during said twenty years, gives her a perfect title.

Sybil Conner held as legatee and not as executrix. After paying the debt of her testator, her title as executrix was gone. *Gardner & Hughes, Ex'rs, vs. Simmes*, 1 *Gill*, 428; *Watkins' Adm'rs vs. State, &c.*, 2 *G. & J.*, 220; *Boyd, et al. vs. Boyd*, 6 *G. & J.*, 25, 33; *Evans, et al. vs. Iglehart, et al.*, 6 *G. & J.*, 183; *Sparks, et al. vs. Weedon*, 21 *Md.*, 165.

In case of lapsed or void legacies, the property goes to the next of kin—the executor is only trustee for them. 2 *Roper*

*on Legacies,* 1704, 1715; *Androvin vs. Poilblanc,* 3 *Atkyns,* 299; *Bagwell vs. Dry,* 1 *P. Will.,* 700.

*Spotswood Garland* and *John Scott, Jr.,* for the appellee.

The bequest in remainder to Thomas Conner was void on account of his condition, and Hannibal Conner died testate only of the two estates for life, there being an intestacy as to the residue of the term. *Hall vs. Mullin,* 5 *H. & J.,* 190, 194 *and* 195, *Heirs of Cunningham vs. Ex'rs, Taylor's Reports,* 209; *Gist vs. Toohey,* 2 *Richardson,* 424; *Wicks vs. Chew,* 4 *H. & J.,* 547.

The unbequeathed portion of the term vested in the executrix, (Sybil Conner,) as well as that part which passed by the will. *Gibbons vs. Riley,* 7 *Gill,* 83; *State vs. Bank of Maryland,* 6 *G. & J.,* 230; *Hays vs. Jackson,* 6 *Mass.,* 152.

The legal title to the unbequeathed remainder continued in the executrix until her death as part of the estate of Hannibal Conner, and vested in the administrator *de bonis non,* on his appointment, as undistributed property. During the life of Gibbs, the holder thereof had no power to take possession or bring *ejectment.* It was a vested estate in *presenti* to be enjoyed in *futuro.* On his death, when it became of present enjoyment, there was no one clothed with the title in existence to whom the right of action or demand could possibly accrue. The title was in abeyance, and the right to possess happened in the interval between the death of the executrix and the appointment of her successor. Limitations and lapse of time is no bar to the latter's right, for, until his appointment, no one had power to take possession. The right to enter and hold, which is required to maintain *ejectment,* never vested in the executrix, for, during her life and that of her son, it remained in the legatees. The present case is one in which the right to bring *ejectment* accrued when there was no one to bring it, and the authorities are decisive, that the period of presumption and of limitations date from the existence of a person free from disabilities, clothed with the right

to sue. *Fishwick vs. Sewell,* 4 *H. & J.,* 428; *Haslett vs. Glenn,* 7 *H. & J.,* 17–24; *Smith vs. Wilson,* 17 *Md.,* 460; *Murray vs. East India Co.,* 5 *Barn. & Ald.,* 212.

ALVEY, J., delivered the opinion of the Court.

This was an action of *ejectment* brought to recover certain leasehold property situate in the City of Baltimore. The case was tried in the Court below on an agreed statement of facts; and whether, upon the facts thus admitted, the plaintiff is entitled to recover is the question to be decided.

From the agreed statement it appears that Hannibal Con-ner died about the year 1813, sole owner and possessor of the leasehold property in question, and that by his will, which was duly admitted to probate after his death, he bequeathed the same to his wife Sybil Conner for life, and after her death to her son Lloyd Gibbs, for his life, and after the death of the latter to an illegitimate son of the testator, named Thomas Conner, absolutely. The last named legatee was a slave for life, and died in the lifetime of Lloyd Gibbs. The wife, Sybil Conner, was appointed sole executrix of the will, and as such obtained letters testamentary upon her husband's estate, and returned an inventory including the property now sued for, but never settled an account in the Orphan's Court. She paid all the debts of the estate, however, and took posses-sion of the property in controversy as legatee under the will, and continued such possession until her death, "without having made any other transfer, conveyance, sale or *distribu-tion* of the same, or having obtained any order of the Court therefor, either as executrix of said Hannibal Conner, de-ceased, or otherwise." Lloyd Gibbs, the next legatee for life, took possession of the premises on the death of his mother, and continued in possession thereof until August, 1822, when he sold all his right, title and interest, in and to the same to one Sumwalt, for the consideration of $110. Sumwalt took possession under the deed from Gibbs, and held it until De-cember, 1822, when, for the consideration of $150, he sold all

his interest in and to the premises to Frederick Cook, who entered into the possession thereof under such sale, and continued such possession until his death, holding and claiming the premises as his own. Upon Cook's death his executor took possession of the premises as part of the estate of his testator, and held possession thereof until they were assigned to the defendant as a distributive portion of the estate of the testator, Cook. "Since which time," adopting the language of the agreed statement, "they have been held by the said defendant as her property, derived from her grandfather, the said Cook, and that the claim of ownership of said property, and the possession thereof, as well of the said Sumwalt, the said Frederick Cook and of the defendant, and of all those claiming under said Sumwalt, Cook, and the defendant, has been exclusive and unbroken, and the acts of ownership of each and all of said parties thus enumerated, have been acts which comport only with the sole and exclusive ownership of said parties of said land."

Gibbs, the second tenant for life, who was not of blood relation to the testator, died more than twenty years previous to June, 1869, when letters of administration *de bonis nis, cum testamento annexo*, on the estate of Hannibal Conner, were granted by the Orphan's Court of Baltimore City to the lessor of the plaintiff in this action. After obtaining such letters the plaintiff made demand of the premises, which was refused.

Hannibal Conner left next of kin who would be entitled to any portion of his estate not effectually disposed of by his will.

Thomas Conner, the party to whom the residuary interest in the premises was given, being a slave for life, and not belonging to the testator, the bequest of that interest failed ; it being well settled that a devise or bequest to a slave for life, if it cannot operate to give freedom, as well as the property intended for the benefit of the devisee or legatee, is absolutely void. *Hall vs. Mullin*, 5 *Har. & John.*, 190. That being so, the residuary interest of the testator, after the expiration of

the estates of the two life-tenants, remained undisposed of, and formed part of the testator's estate for distribution to his next of kin. And it is upon the assumption that the estate of Hannibal Conner has not been fully administered, and distribution of this *residuum* made, that letters of administration *de bonis non* have been obtained from the Orphans' Court.

Whether such letters were properly granted is not for this Court to determine. The Orphans' Court granting the letters had *exclusive* jurisdiction of that matter; but whether the property sued for in this action vested in the lessor of the plaintiff by virtue of such letters is quite a different question, and one that depends upon the fact whether the estate was fully and completely administered by the executrix of Hannibal Conner.

There can be no question but that to enable the next of kin to derive and establish complete title to the personal estate of the deceased, administration is essential. And although this is not denied, it is insisted, that, in this case, the premises in controversy having passed into the possession and enjoyment of the life tenants, as legatees under the will, by the assent of the executrix, the estate, as to this particular property, must be taken as having been fully administered, and that the next of kin were entitled to take, after the expiration of the estates for life, without any further administrative act on the part of the executrix. For this position, however, none of the authorities cited in argument give any support, nor have we been able to discover any precedent that would lend it the remotest sanction.

It is admitted that no distribution in fact was ever made to the next of kin, nor was there ever an account stated in the Orphans' Court. It does not, in any manner, appear that the executrix ever even recognized the right of the next of kin to distribution of the *residuum* of the estate; and it is certain that the Orphans' Court was never called upon to sanction any distribution whatever. In such a state of things, how can it be said that the estate has been fully

administered? It may well be, that the legatees for life were allowed to enjoy their legacies, and to that extent, and so far as they were concerned, the estate was administered; but it does not follow, by any means, that the estate was therefore fully administered in regard to the rights of all other persons. Until distribution of the *residuum* of the estate to the next of kin, there was not full and complete administration; for, without distribution according to law, the next of kin could neither claim nor sue for any *specific* property of the estate. It is only through distribution that the title of the distributees to possession and actual enjoyment can be shewn, though they may have an interest in the property, subject to distribution, before the distribution is actually made.

The Act of 1798, chapter 101, sub-chapter 11, section 16, and sub-chapter 14, section 12, directed when and how distribution should be made in the Orphans' Court; and sub-chapter 5, section 6, and sub-chapter 14, section 2, of the same Act, directed when letters of administration *de bonis non* might be granted; "and the authority conferred by such letters," says the Act, "shall be to administer all things herein described as assets, not converted into money, and not *distributed* or *delivered*, or retained by the former executor or administrator under the Court's direction."

In the case of *Scott vs. Fox*, 14 *Md.*, 388, the Orphans' Court had passed an account in which the administratrix charged herself with the balance due the estate by the former account, and claimed credits for payments made to each of the distributees, in full of their shares, except one, whose share was placed to his credit in bank, and for which, also, she claimed credit in her account. But because it did not appear that any meeting of the distributees was appointed, or any notice of such meeting given, or that the distributee, whose share was deposited in bank, had ever received it, or assented to the distribution made, it was held, that there had not been a final distribution of the estate made by the

Orphans' Court, and that there was nothing in the account passed by that Court to prevent an administrator *de bonis non*, seven years after, from having errors corrected and distribution completed. And if an administrator *de bonis non* was deemed proper and necessary in that case to represent the estate and complete the administration, how much more was one required in this, where no administration account has ever been settled, and no attempt even to make distribution of that part of the estate to which the next of kin was entitled?

· This case cannot be distinguished in principle from that of *Alexander vs. Stewart*, 8 *G. & J.*, 226. There the administrator *de bonis non* was deemed, not only proper, but actually necessary, the executor not having completed the administration by delivering over the property in his hands to the persons entitled thereto, without which, said the Court of Appeals, there could be no full administration.

It was supposed in that case, because all the debts had been paid by the executor, and the estate had, in all respects, been fully administered, except that the specific property belonging to the estate had not been actually delivered over to the parties entitled to it under the will, that it was competent for the administratrix of the deceased executor, to have passed the property, remaining specifically in her hands, to the distributees, without the intervention of an administrator. But the Court of Appeals said: "It is true, if all the debts were paid, they (the distributees) were beneficially entitled to it; but they could not have been clothed with a legal title but through the medium of an administrator, and had their possession been thus acquired, it might have been liable to be divested by the grant of letters subsequently to an administrator *de bonis non*. The Act of Assembly, in express terms, rendering effects, specifically existing, liable to administration."

The *residuum* of Hannibal Conner's interest in the premises, upon the termination of the estates for life given by his

Grove, *et al. vs.* Trustees of the Disciples, &c.

will, not having been converted into money, nor distributed or delivered to the party entitled, or retained by the former executrix, under the Court's direction, it is a proper subject for an administration *de bonis non*, and, therefore, became vested in the administrator upon the grant of such letters. And as there has been no person in being capable of suing since the termination of the last life estate under H. Conner's will, until the grant of letters to the lessor of the plaintiff, the Statute of Limitations does not bar, although the holding of the defendant, and those under whom she claims, has been exclusive, and by claim of right and title in themselves, for more than twenty years since the termination of such life estate, and before the bringing of this action.

*Judgment affirmed.*

(Decided 12th January, 1871.)