(Decided 2nd November, 1883.)

---

Sharlet Rockwell *vs.* William Young

*Title to the Personal estate of a Decedent—Administration—*
*Limitations—Letters of Administration—Executor de son*
*tort—Sale of Personal Property—Defence—Payment to the*
*True owner by a Vendee, as a Defence to an Action by the*
*Vendor without Title.*

Title to the personal estate of a decedent can be transmitted only
through the instrumentality of letters of administration. The
appointment of an administrator is indispensable to the deriva-
tion of title to a decedent's personal estate.

Limitations do not begin to operate before letters of administration
are taken out.

An executor *de son tort* cannot sell the chattels of a decedent and
pass a good title to the purchaser as against the subsequently
appointed lawful administrator, such purchaser not being a credi-
tor of the estate and not taking the property in discharge of any
debt due him by the decedent.

Rockwell *vs.* Young.

An executor *de son tort* or other wrongful intermeddler cannot be per-mitted to deal with and dispose of the estate of a decedent, in a mode expressly forbidden to the lawfully appointed executor or administrator. A sale which is void and passes no title, if made by the latter, cannot be valid and pass a good title when made by the former.

The vendee of property of an intestate, purchased of his widow who had not taken out letters of administration upon the estate of the deceased, having paid part of the purchase money and given his note for the balance, can plead as a sufficient defence to an action on the note by the vendor, that he paid the amount due thereon to the lawfully appointed administrator of such deceased, who made demand on him therefor and threatened to take possession of the property as administrator unless he did so pay.

APPEAL from the Circuit Court for Allegany County.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., YELLOTT, MILLER, and IRVING, J.

*James E. Ellegood,* for the appellant.

*A. Hunter Boyd,* for the appellee.

MILLER, J., delivered the opinion of the Court.

This action was brought in April, 1882, by the appellant against the appellee upon a promissory note for $225 given by the defendant to the plaintiff, dated the 5th of March, 1881, and payable in six months. This note was given as part payment for four mules sold by the plaintiff to the defendant at its date. The case was submitted to the Court below upon an agreed statement of facts, all errors in pleading being waived, and the Court to draw such inferences from the facts stated as a jury could.

From the statement of facts it appears that Sharlet Rockwell, the plaintiff, is the widow of Solomon Rockwell,

who, in the spring of 1874, purchased four mules from one Hassett, for $690, but before fully paying for them died intestate in December, 1874. Upon his death his widow took possession of these mules and other property of her deceased husband, and proceeded to sell and dispose of all of it and to pay his debts. Hassett was paid $379, the balance due him for the mules out of the proceeds of a $500 note, which one Tice owed the deceased. The widow sold the mules to Young, the defendant, for $450, and he paid her $225 in cash, and gave her the note in suit, upon which he subsequently paid $25. Joel Charles was appointed administrator of the estate of Solomon Rockwell, by the Orphans' Court of Washington County, on the 5th of April, 1881, (no letters of administration having previously been granted to any one,) and has never made any return of any assets of the deceased. When her husband died, Mrs. Rockwell resided in Washington County, and did so for two years thereafter, when she removed to the State of West Virginia where she now resides. She never applied for letters of administration on her husband's estate, but never renounced her right to such letters. No summons was issued for her, nor was she otherwise notified to appear and take out letters, nor was any one else notified or summoned for the purpose of administering on the estate. Charles, the administrator, died in September, 1882, but before his death the defendant paid to him $200 the balance due on the note in suit, the said Charles having previously made demand upon him therefor, and threatened to take possession of the mules as administrator of Rockwell, unless the defendant did so pay. When he bought them he believed they were the property of Sharlet Rockwell and did not know they had belonged to her husband.

Upon these facts the Court below gave judgment in favor of the defendant, and from that judgment the plaintiff has appealed.

It is a general and familiar principle of law that in every sale of personal property there is an implied warranty of title by the vendor. *Mockbee vs. Gardner*, 2 *H. & G.*, 176; *Osgood vs. Lewis*, *Ibid*, 495; *Giese vs. Thomas*, 7 *H. & J.*, 460. And it is an equally well settled general rule, in this State at least, that title to the personal estate of a decedent can be transmitted only through the instrumentality of letters of administration. *Smith vs. Wilson*, 17 *Md.*, 460; *Cecil vs. Clarke*, *Ibid*, 520; *Alexander vs. Stewart*, 8 *G. & J.*, 246. The statement of facts shows that the plaintiff never took out letters of administration upon her husband's estate, and that the first grant of such letters was to Charles in April, 1881, a little more than six years after Rockwell's death. It has, however, been earnestly argued by her counsel that the plaintiff by taking possession, and selling and disposing of all her husband's personal estate, and paying his debts, made herself his executrix *de son tort*, and that absolute title had vested in her by lapse of time or limitations, or if this be not so then that she held these mules as executrix *de son tort*, and that the sale of them by her *prior* to the grant of letters to Charles, passed a good title to the purchaser. But in so far as lapse of time or limitations are relied on as conferring, or aiding in conferring title upon the plaintiff, the authorities are too clear and decisive to be questioned. In the leading case of *Fishwick vs. Sewell*, 4 *H. & J.*, 393, nearly forty years elapsed before letters were granted, and the Court held that limitations could not begin to operate before the letters were taken out, and, therefore, constituted no bar to an action of trover brought by the administrator against the defendant who claimed the property under the will of a party who had taken possession of it immediately upon the death of the intestate. The law thus laid down in that case, which was decided in 1818, has been applied in every instance in which the same question has since arisen. *Haslett vs. Glenn*, 7

*H. & J.*, 17; *Hagthorp vs. Hook*, 1 *G. & J.*, 276; *Donaldson vs. Raborg*, 26 *Md.*, 326; *Smith vs. Dennis*, 33 *Md.*, 442. In the case last cited ejectment was brought by an administrator *de bonis non* for leasehold property, which had fallen into the estate after the termination of life estates created by will, and the Court said, "as there has been no person in being capable of suing since the termination of the last life estate, until the grant of letters to the lessor of the plaintiff, the Statute of Limitations does not bar although the holding of the defendant, and those under whom she claims has been exclusive and by claim of right and title in themselves for more than twenty years since the termination of such life estate, and before the bringing of this action." With respect to the other contention the case does not require us to determine what acts or degree of intermeddling with the estate will make one an executor *de son tort*, nor to what extent such an executor may be made liable to creditors, or how far the law will protect him and recognize his acts as lawful when sued by creditors. The single question here is, can such an executor (assuming the appellant to be such) sell the chattels of a decedent and pass a good title to the purchaser as against the subsequently appointed lawful administrator, such purchaser not being a creditor of the estate, and not taking the property in discharge of any debt due him by the decedent? Our statute law gives a definite answer to this inquiry, if not by other provisions, certainly by the enactment that "no executor or administrator shall sell any property of his decedent without an order of the Orphans' Court granting the letters, being first had and obtained, authorizing such sale, and any sale made without an order of Court previously had as aforesaid, shall be void, and *no title shall pass thereby to the purchaser*." In the face of this enactment it is not to be tolerated for a moment that a wrongful intermeddler can be permitted to deal with and dispose of the estate in a mode expressly

forbidden to the lawfully appointed executor or administrator. A sale which is void and passes no title if made by the latter cannot be valid and pass a good title when made by the former. But apart from this particular statute, and indeed prior to its enactment (Act of 1843, ch. 304,) the decisions of the Appellate Court already cited, as well as the reasoning of the Chancellor in *Hagthorp vs. Hook*, 1 *G. & J.*, 277, 278, to the effect that the appointment of an administrator, as the law requires, is indispensable to the derivation of title to a decedent's personal estate, compel us to the same conclusion. Indeed if the position contended for by the appellant should be sustained by this Court our system of administration, so carefully regulated by law for the protection of all parties interested, would be practically subverted, and an " authorized scramble" for every estate worth contending for, substituted in its place.

But it is further argued that an executor *de son tort* having title and disposing of that title, the purchaser takes it and cannot set up a breach of warranty until he has been *ousted* by some superior title or recovery at law had. It is true authorities are not wanting to sustain the proposition that a purchaser of personal property cannot defeat a recovery for the price agreed to be paid by showing that the property is owned by another, unless he has been ousted, or there has been a recovery by the true owner. In fact in *Case vs. Hall*, 24 *Wend.*, 10, NELSON, Ch. J., laid it down as law that where the vendee relies upon the warranty of title express or implied there must be a recovery by the real owner before an action can be maintained, and that this is in the nature of an eviction and is the *only evidence* of the breach of the contract in analogy to the case of covenants real. And in the more recent case of *Krumbhaar vs. Birch*, 83 *Penn.*, 426, it was decided that where the purchaser seeks to defend an action for the purchase money on the ground of a breach of war-

ranty he must show an eviction or an involuntary loss of possession. To the same effect are the cases of *Linton vs. Porter*, 31 *Ill.*, 107; *Gross vs. Kierski*, 41 *Cal.*, 111, and no doubt other decisions announcing the same doctrine may be found. On the other hand Courts of equally high authority, maintain the law to be, that if a chattel is sold to which the vendor has no title the purchaser may maintain an action against him to recover damages therefor, though he has not been disturbed in his possession, holding that in such a case the breach occurs at the time of the sale in analogy to a covenant in a deed against incumbrances which is broken as soon as the deed is delivered. *Grose vs. Hennessey*, 13 *Allen*, 389; *Perkins vs. Whelan*, 116 *Mass.*, 542; *Payne vs. Radden*, 4 *Bibb.*, 304; *Scott vs. Scott*, 2 *A. K. Marshall*, 217; *Chancellor vs. Wiggins*, 4 *B. Monroe*, 201.

There has been no direct decision upon this precise point in Maryland, but it is not necessary in order to sustain the defence in the present case to go to the extent of adopting the law as laid down in the Massachusetts and Kentucky decisions. The statement of facts shows that the defendant "paid the amount due on the note in suit to Charles, the said Charles having previously made *demand* on him therefor and *threatened* to take possession of the mules, as administrator of Rockwell *unless he did so pay*," and this payment is in our opinion a good defence to the action. In the case of *McGiffin vs. Baird*, 62 *N. Y.*, 329, the opinion is expressed that such a defence would be sustained, for the Court say: "If the property is taken from the purchaser by title paramount, or if the purchaser is compelled to pay the true owner the value of the property, in either case it is a defence for the purchase money. So if the vendee returns the property upon discovering the defect in title he may have an action on the implied warranty, and of course a defence to an action for the purchase price, in which case he assumes the *onus* of proving title in a third

person; and upon the same principle, if for any reason it is impracticable or even undesirable to return the property, perhaps the purchaser may pay the claimant its value without legal proceedings and avail himself of it as a defence upon assuming the burden of establishing the validity of the claim." And in *O'Brien vs. Jones,* 91 *N. Y.,* 193, a case decided by the same Court during the present year, this qualification of the rule as laid down in *Case vs. Hall,* is adopted without hesitation, the Court saying that when the vendee relies upon a breach of warranty of title express or implied "he must either restore the property to the true owner, or be prepared to prove its loss under compulsory proceedings, or the payment of money through judgment obtained against him, *or voluntarily in answer to a claim made,* and in that case must also affirmatively establish that the claimant was the true owner and that his vendor was without title." The same exception to the general rule is also recognized by COOLEY, J., in *Estelle vs. Peacock,* 48 *Mich.,* 469, and in *Matheny vs. Mason,* 73 *Mo.,* 677, the point expressly decided was that a vendee who discovers his vendor had no title may, upon being threatened with suit by the true owner, pay him the price, and such payment will be a complete defence to an action by his vendor, provided he shows that the party he paid was in fact the true owner. There are also English cases very similar to the one before us. *Dickenson vs. Naul,* 4 *Barn. & Adol.,* 638; *Allen vs. Hopkins,* 13 *Mees. & Wels.,* 94. In the former an action was brought for the price of goods by an auctioneer employed by a supposed executrix to sell the property of the testator, but before the goods were paid for it appeared that another person was the real executrix, who gave notice of that fact and claimed payment of the money from the buyer, and he paid it, and it was held that the auctioneer could not afterwards maintain an action against the buyer, though the latter had expressly promised to pay on being allowed to take the

goods away which he did. The latter was an action for goods sold and delivered. The defendant pleaded as to part of the goods that the plaintiff had sold them as executor of one John Allen, and that in point of fact he was not executor, but another was executor who demanded payment to him, and that defendant had paid him, the rightful executor, the money. Upon replication and issue a verdict was rendered for the defendant, and a motion was made to enter judgment for the plaintiff *non obstante veredicto*. POLLOCK, C. B., in delivering the judgment of the Court, said : "In substance the plea is this—that the plaintiff had no title except a pretended title, that turned out not to be well founded. The plea states that the person who really was entitled was the representative of the deceased whom the defendant had paid for the goods. The substance of the plea is that the defendant had paid the party to whom the goods belonged and who would have been entitled to maintain an action of trover for the goods, if the right to them had not been satisfied by payment of the price agreed on between the defendant and the pretended executor. Upon principle it seemed that that would be undoubtedly a good defence, but the case of *Dickenson vs. Naul* appears to us to be a direct authority for maintaining the doctrine (if indeed any authority need be cited for a proposition so plain) that if goods be sold by a person who is not the owner, and the owner be found out and be paid for these goods, the person who sold them under pretended authority has no right to call upon the defendant to pay him also."

The application of this doctrine to the present case is obvious. We have shown that the plaintiff had no title to these mules. The title to them vested absolutely in the administrator, Charles, and he could undoubtedly either have recovered them from the defendant by replevin or have sued him in trover for their conversion. He had already paid part of the purchase money to the plaintiff

who had no title, and what good reason can be assigned why he should not be permitted to pay the balance to the administrator, if he was willing to accept it, in order to preserve possession of the property and save himself from further possible loss? And what reason or justice would there be in allowing the plaintiff to recover from the defendant when he would be compelled to pay the same money, and possibly more, to the administrator for the same property? Would it be equitable or just to require the defendant to pay this money to the plaintiff, and, when compelled by the true owner to pay the same a second time, to take the chance of recovering it back from her in an action on the warranty? By allowing this defence there is certainly no injustice done to the plaintiff, for she has already received more than she is entitled to, and it would seem to be but sheer justice to hold, as we do, that payment made to the true owner under the demand and threat set out in the statement of facts, is sufficient to defeat this action.

It has also been argued that Charles had no right to the administration, and that the letters to him were irregularly and improperly granted. Assuming (but without intimating an opinion to that effect) that it is competent for the plaintiff to assail the validity of these letters in this action, we find nothing in the statement of facts to show that they were not granted in strict conformity with the requirements of the statute on this subject. The widow resided out of the State at the time they were granted, and therefore no notice to her was required. *Code, Art.* 93, *sec.* 33. And it is not shown, nor is there any thing in the statement of facts from which the inference can be drawn, that there was any other person entitled to administration before Charles, or that the Court could not have granted him the letters in its discretion under Art. 93, sec. 31.

*Judgment affirmed.*

(Decided 2nd November, 1883.)