Scott vs. Fox.

*Judgment affirmed.*

(Decided July 29th, 1859.)

## EVAN SCOTT vs. WASHINGTON FOX.

Letters of administration *de bonis non* must be granted in every case where, upon the death of the administrator, there are *unadministered* assets belonging to the estate, and *prima facie* proof of such assets is all that is required.

A mere *verbal* order or authority from an orphans court, allowing an administratrix to take the property returned in the inventory, at the appraisement, is of no effect.

The orphans court passed an account in which the administratrix charged herself with the balance due the estate by her former account, and claimed credits for payments made to each of the distributees, in full of their shares, except one whose share was placed to his credit in bank, and for which, also, she claimed credit in her account.   It did not appear that any meeting of the distributees was appointed, or any notice of such meeting given, or that the distributee, whose share was so placed in bank, ever received it, or assented to the distribution thus made.   HELD:

1st.  That the passage of such an account cannot be regarded as a *final distribution* of the estate made by the orphans court, under the provisions of the testamentary system.

2nd.  The failure to appeal from the passage of such an account, for more than thirty days, will not prevent an administrator *de bonis non,* seven years thereafter, from obtaining a correction of any errors in it.

It is a principle, settled beyond all doubt, that administration accounts are only *prima facie* correct; this *ex-parte* character imperiously requires they should be so; errors in them have been repeatedly corrected when made to appear either in courts of law or equity.

APPEAL from the Orphans Court of Howard County.

This appeal is from an order of the court below refusing to grant letters of administration *de bonis non* upon the estate of George Fox, deceased, upon the application of the appellant. The facts of the case are fully stated in the opinion of this court.

Scott *vs.* Fox.

The cause was argued before Le Grand, C. J., Eccle-ston and Bartol, J.

*Robt. J. Brent* and *Wm. H. G. Dorsey*, for the appellant, argued:

1st. That the record shows there was property belonging to the estate of George Fox not distributed, and the orphans court erred, therefore, in not granting letters *de bonis non* to the next of kin entitled thereto.

2nd. That the evidence of Jenkins, the Register of Wills, offered on the part of the appellee, was inadmissible.

3rd. That the orphans court had no power to pass an order allowing the administratrix to take the property at the appraisement. *2 H. & J.,* 483, *Hall vs. Griffith.* *7 H. & J.,* 22, *Haslett vs. Glenn.* *6 G. & J.,* 171, *Evans vs. Iglehart.* As an administrator cannot purchase at his own sale, so as to make profit, neither can he purchase at the appraisement. All such purchases are absolutely void as against the distributees. *3 Clarke's Appeal Cases,* 608. *4 How.,* 503, *Michoud vs. Girod.*

4th. That under the Act of 1842, ch. 293, sec. 5, Mrs. Scott being entitled to her share of the negroes, specifically, after payment of the debts of her father, she could not part with her right thereto except in the manner provided in that Act. No subsequent Act of Assembly has changed this law.

5th. That the certificate of deposit remaining in the custody of the former administratrix could not now be *legally delivered* by any one but an administrator *de bonis non.* If the first administratrix died holding in possession the voucher of a *chose in action* upon delivery of which to a third party the control of the administratrix ceased; still, while it so remained in the custody of the administratrix, it was assets of the estate, and she could, at any time, have surrendered the certificate to the bank and reclaimed the money. Therefore, there should be an administration *de bonis non,* at all events. *8 G. & J.,* 226, *Alexander vs. Stewart.*

*Thos. Donaldson* and *A. H. Hobbs,* for the appellee, argued:

1st. The passing of the second account of Mrs. Fox on the

9th of September 1851, was a *final distribution* of the persona estate of George Fox deceased. The orphans court had the power to order such a distribution, and could authorize the administratrix to take the property at the appraisement. 2 *Gill*, 145, *Ridenour vs. Keller.*

2nd. The *action* of the court, in making such distribution and in passing this second account, *closed* the administration of the estate, leaving nothing *unadministered*, and the order thus passed was one from which an appeal lay. 4 *Md. Rep.*, 426, *Parker & wife vs. Gwynn.* 9 *G. & J.*, 335, *Stevenson vs. Schriver.* 1 *Johns. Ch. Rep.*, 91, *Simpson vs. Hart.* 6 *Paige*, 623, *Murray vs. Graham.* *Breese, (Ill. Rep.,)* 135, *Reynolds vs. Mitchell.*

3rd. The *final* order of distribution having passed, it was the right and privilege of the appellant, if he considered his interests injuriously affected, to have taken an appeal from the decision of the court within thirty days from the date of the passage thereof, and not having done so, his remedy is lost. 12 *Md. Rep.*, 292, *Porter vs. Timanus.* 10 *G. & J.*, 366, *Mayhew vs. Soper.* 1 *H. & G.*, 9, *Sewell vs. Sewell.*

4th. The matter of distribution was *finally adjudicated and disposed of* in September 1851, and cannot now be made the subject of a new suit. 12 *Md. Rep.*, 566, *Beall vs. Brown's Adm'r.* 2 *Md. Rep.*, 325, *Brumbaugh vs. Schnebly.*

5th. Even a court of equity could not, after such a lapse of time, disturb a distribution made by the orphans court. The second account was passed in September 1851, and *seven years* elapsed before any action was taken by the appellant to review the decision of the court. In the meantime, he *knew* the distributive shares had been paid to all the other parties, and the administratrix had been permitted to retain, use and dispose of the specific personal property, as if absolutely her own, and no *fraud* is *alleged.* 2 *Gill*, 145, *Ridenour vs. Keller.* 8 *Md. Rep.*, 395, *Edwards vs. Bruce.*

6th. Independently of the passing of the second account, which showed an *actual distribution* by the orphans court, after such a lapse of time, it would be presumed that there had been a distribution. No written order is necessary, and it was

competent for the appellee to prove the action of the court by oral testimony. 2 *Gill*, 145, *Ridenour vs. Keller*. 2 *G. & J.*, 84, *Allender vs. Riston*.

7th. The evidence of Jenkins was admissible to show what was the action of the court, but even if not admissible for that purpose, it was certainly admissible to show that the appellant *knew* that the distribution was made in 1851, and that, therefore, he is chargeable with laches in not taking proceedings for *seven* years. 10 *G. & J.*, 364. *Fowler vs. Lee.*

8th. The certificate of deposit was made *subject to the appellant's order*, and an administrator *de bonis non*, would have no power to reduce it to his possession or control in any way. It was a part of the order of the orphans court that the certificate should be subject to the order of the appellant. The court will observe, on examination, that the case of *Alexander vs. Stewart*, 8 *G. & J.*, 226, has no application to the one at bar. The attempt *there* was to *take* the property from the jurisdiction and control of the orphans court.

ECCLESTON, J., delivered the opinion of this court.

The appellant, E. Scott, asks for a reversal of an order passed by the orphans court of Howard county.

In August 1858, Scott appeared in court and suggested that Nancy Fox, the administratrix of George Fox, late of said county, had died leaving property belonging to the estate of the said George Fox, not distributed among his representatives; and thereupon the court directed that the next of kin of the said George Fox, should be summoned to show cause, if any, why letters of administration *de bonis non*, should not be granted upon his estate.

On the 16th of November following, Washington Fox, the appellee, and only son of said George, appeared and denied that there was any property belonging to the estate of his father not distributed.

It appeared in proof that George Fox died in May 1848, leaving a widow and five children; and Evan Scott married his daughter, named Elizabeth, who is still living. That letters of administration upon his estate were granted to his

widow, Nancy Scott, who returned an inventory amounting to $2106.65, including *six negroes*, appraised in the aggregate, to $1110.00. She also passed two administration accounts. In the first, she charged herself with the amount of the inventory, and cash on hand at the decease of the intestate, amounting to $2231.65, and claimed credit for disbursements, in payment of debts, &c., for $429.98, leaving a balance of $1801.67, due the estate. With this balance she charged herself in the second account, and claimed credit for fees paid the Register of Wills, for her own one-third of the estate, and for payments made to each of the children of the intestate, in full of their shares of the estate, except to the appellant and his wife, for whose share she claimed credit on account of the amount deposited in the Patapsco Bank to his credit. This account was passed on the 9th of September 1851, and the certificate of deposit is dated the same day; stating that "Evan Scott has credit in this bank for two hundred and thirty-nine dollars and twenty-seven cents, deposited by Mrs. Nancy Fox, ex'x, subject to the order of the said Evan Scott, and payable upon the return of this certificate No. 559." It was also proved that a few days before the passage of the last account of the administratrix, the sum of money mentioned in the said certificate was tendered to Evan Scott by Washington Scott as agent of said administratrix, but that he refused to receive the same.

It was shown, on the part of Scott, that it does not appear, from any of the records of the register's office, that the administratrix was allowed to take the property of George Fox at the appraisement in the inventory, except in so far as the same appears in her administration accounts passed by the court.

Fox, the appellee, then examined T. Jenkins, (the Register of Wills,) who testified that on the 9th of September 1851, in his presence, the court "allowed and sanctioned the said Nancy Fox, as administratrix, to take the personal property at the appraisement, and that the court afterwards directed that the distributive share of Evan Scott should be deposited by the administratrix in the Patapsco Bank." And Jenkins further

testified that, whilst he was register, it was not customary for the court to pass special orders in writing, in regard to permitting administrators to take articles of personal property at the appraisement, or directing the mode of distribution.

To all the testimony of Jenkins, Scott objected, as being inadmissible, and the same was taken under exception.

On the 16th of November 1858, the orphans court ordered and adjudged, that as it did not appear there was any property of George Fox not distributed, letters of administration *de bonis non* should not be granted, and thereupon Scott appealed.

During the present term, the case of *Grimes & Wife vs. Talbert & Wife, et al.*, has been decided. (*Ante.*, 169.) It was an appeal from the orphans court of Prince Georges county. The record showed that a certain James D. Barrett died intestate in 1830, leaving Lucy Barrett his widow, and several children, one of whom is the wife of the appellant, Jeremiah A. Grimes, and the widow of Barrett is now the wife of the appellee, Talbert. Some twenty-eight years after the decease of Barrett, no letters of administration having ever been granted upon his estate, Grimes and his wife filed a petition in the orphans court alleging, that at the time of Barrett's decease, he left two negro women who have since had children, and praying the court to grant letters of administration upon the estate, and that the petitioners might have their share of the negroes. The appellees answered the petition, denying that Barrett had any personal property at his decease, and alleging that the negroes mentioned in the petition were given to his widow after his decease. The proof given was conflicting, and the orphans court refused the letters. This court reversed the order and remanded, the cause that letters of administration might be granted. In the decision it was held, that "In an application for letters, the dying intestate and leaving personal estate must be shown; the former must be 'proved to the satisfaction of the court;' the latter need not be conclusively established; *prima facie* evidence thereof is all that is necessary. The action of the court is not dependent upon the weight of evidence. If the application be resisted and proof be offered to show that the

50     v. 14.

intestate left no property, it cannot avail, unless it be clear and explicit, and above all doubt. It was not designed by the statute that questions of title to personal property should be tried and determined by the orphans court in a summary proceeding upon an application for letters. Neither the organization of the court, nor their mode of proceeding, enables them satisfactorily to pass upon such a question."

In support of this application for letters *de bonis non,* it is alleged, that at the death of the administratrix, there were unadministered assets belonging to the estate of her intestate.

This is denied on the part of the appellee. He insists that the administration accounts and the deposit made in the Patapsco Bank, show the estate to have been fully administered and distributed. The inventory, however, discloses that the estate consisted in part of six negroes, appraised at $1110; and there is no proof whatever that they, or any of them, were ever sold under an order of the orphans court, or without such an order, either for the purpose of paying debts, or for distribution; and they were not specifically distributed. With a view of avoiding any advantage which the appellant could claim, on account of the absence of such proof, the appellee offered the parol evidence of the register of wills, which has already been stated.

Now, without stopping to inquire whether the appellant's counsel are right in contending that the orphans court had no power to pass an order allowing the administratrix to take the property at the appraisement, there can be no doubt that a mere verbal order or authority, for such a purpose, can have no more effect than if it had never been given.

In the case of *Carlysle vs. Carlysle,* 10 *Md. Rep.,* 440, part of a sum of money belonging to a ward, which his guardian had lent, on a mortgage, was lost. The guardian petitioned the orphans court to allow him a credit, in his account, for the portion of the loan which he could not collect. The application was resisted on the part of the ward; and the orphans court ordered the guardian to be charged with the loss; from which order he appealed.

The petition alleged that the loan had been authorized by

the orphans court; and parol evidence was offered to show that the court, *verbally*, gave authority to make it. This evidence was excepted to, as being inadmissible for the purpose for which it was offered; and the appellee contended there was no legitimate proof that the court ever sanctioned the loan. The appellant insisted that the orphans court is not a court of record, and when it appears any of its proceedings are not reduced to writing, they may be established by parol proof. He admitted the authority which he had was not in writing, but verbal.

In conclusion the court say: "The applicant in the present case relies upon parol evidence, only, for the purpose of proving that he was authorized by the court to make the loan in controversy, which authority was not in writing, nor was any entry of it directed to be made by the register, and in fact it never was entered or recorded by him among the proceedings of the court. Under these circumstances we must treat the case as if no such authority or order ever had existence, and of course, as if the guardian made the loan without the sanction of the court. The result of which is, the appellant should be held responsible for the loss."

The appellee's counsel insist that the order below should be affirmed, because the present appellant did not appeal from the passage of the second administration account within thirty days after it had been passed. They speak of the account as a final order of distribution, from which they say an appeal might have been taken by Scott within thirty days, if he considered his interests injuriously affected thereby, but after a lapse of seven years it cannot now be made the subject of a new suit. They further say, that even a court of equity could not, after such a lapse of time, disturb a distribution made by the orphans court.

This record, however, does not show that the account alluded to can be properly regarded as a final *distribution* of the estate, made by the orphans court, under the provisions of our testamentary system.

The Act of 1798, ch. 101, in sub-ch. 11, sec. 16, and sub-ch. 14, sec. 12, directs when and how a distribution may be made by that court.

Speaking in reference to the duty of an executor or administrator, in the case of *Conner vs. Ogle,* 4 *Md. Ch. Dec.,* 450, Judge Brewer (deciding in the place of the Chancellor,) says: "If he doubts as to who are entitled to distribution, legacy or residue, or in what proportions, by sub-ch. 14, sec. 12, 'he may appoint a meeting of the claimants, and payment or distribution may be made under the court's direction and control.' In most cases he would be safe in acting under that direction and control, but he must show that the meeting was duly appointed, notification of some kind given to the parties interested, and the case presented to, and acted upon by, the court." The order passed in that case was taken to the Court of Appeals, where it was affirmed *"for the reasons assigned below."*

The present record does not show that any meeting of the distributees had been appointed, or that any notice of an intended meeting had been given. And it appears from the appellee's own proof, that a few days before the passage of the second or last administration account, the sum of money mentioned in the certificate of deposit in bank, was tendered by an agent of the administratrix, to Evan Scott, but he refused to receive the same. It is not even alleged that he ever received it; nor is there any proof that he and his wife, or either of them, ever assented to the alleged distribution.

Under such circumstances it will be seen that this case differs essentially from that of *Ridenour, et al., vs. Keller,* 2 *Gill,* 134. There the court say, at page 144: "The record discloses the fact, that the distributees of John T. Mason and Elizabeth Mason, (excepting the widow of J. T. Mason,) are the same persons; that each of those distributees have received their portion (those of full age, themselves, the minors, by their guardians) of their estate."

It is also said: "The distributees have not only received their distributive portion of the estate of J. T. Mason, but they have received the whole of the estate of his administratrix, their mother, whose estate consisted, almost entirely, of what she derived from her intestate, dead husband."

The distribution of J. T. Mason's estate, as made and paid

Scott *vs.* Fox.

over by his administratrix, to all the parties entitled, had been suffered to sleep in silence for more than sixteen years, without any attempt to question the integrity thereof.

We cannot regard the distribution, here relied upon by the appellee, as having been made by the orphans court, by virtue of their authority under the Act of 1798. There does not appear to be any distribution except such as may have been made by the administratrix. The second account is but an administration account, in which the accountant claims allowance for payments under the distribution made by herself, and the amounts retained to meet the portions not paid.

A failure, for more than thirty days, to appeal from the passage of such an account, will not have the effect to prohibit an administrator, *de bonis non*, from obtaining the correction of any errors which may have been committed in the former administration. It is a principle, settled beyond all doubt, that administration accounts are only *prima facie* correct. Their ex-parte character imperiously requires they should be so. Errors in them have been repeatedly corrected, when made to appear, either in courts of law or of equity.

In the case of *Hanson & wife, et al., vs. Worthington, et al.*, 12 *Md. Rep.*, 418, an *ex-parte* distribution was corrected by a proceeding in equity commenced more than seven years after the distribution had been made. On page 441, the court say: "In the administration of the estate, the duty of the executors was to ascertain the persons entitled to the fund; their proceedings in the orphans court were *ex-parte*. No steps were taken by them, under the Act of 1798, ch. 101, sub. ch. 14, sec. 12, in appointing a meeting of claimants, nor was the distribution made under any order of the court; it was not conclusive on the complainants, even if they had been *sui juris*." Again, it is said, "When the final distribution was made, the complainants were married women."

The appellant's wife is a daughter of George Fox, the intestate, and one of the distributees of his estate. She was married when the alleged distribution was made.

Sub. ch. 5, sec. 6, of 1798, provides that, "In case any executor, executrix, administrator or administratrix, shall die

before the estate shall be fully administered, letters of administration, *de bonis non*, shall be granted to the person entitled agreeably to the rules herein before laid down, and the proceedings shall, in all respects, be the same as if administration had been originally granted."

The 2nd sec. of sub. ch. 14, enacts that, "If an executor shall die before administration is completed, letters *de bonis non* may be granted at the discretion of the court, with a copy of the will annexed, (if the case require,) giving preference, however, to the person entitled, if he or she shall actually apply for the same;    ❋    ❋    ❋    ❋    ❋    ❋    ❋ and the authority conferred by such letters shall be to administer all things herein described as assets, not converted into money, and not distributed or delivered, or retained by the former executor or administrator, under the court's direction." See, also, the Act of 1820, ch. 174, sec. 3.

*Alexander vs. Stewart*, 8 *G. & J.*, 226, is a case in which it was contended that the administration *de bonis non* was merely a useless ceremony, calculated only to produce delay and burthen the estate with additional costs and commissions. Nevertheless, the court held that the letters *de bonis non* had not only been properly granted, but were absolutely necessary.

In view of the circumstances, and more especially in consideration of the principles announced in *Grimes & wife vs. Talbert & wife*, we think the order appealed from should be reversed and the cause remanded, that letters of administration *de bonis non* may be granted to the party who may be entitled to the same.

*Order reversed and cause remanded.*

(Decided July 29th, 1859.)