SARAH WILSON *vs.* JAMES McCARTY, Surviving Executor of EDWARD McCARTY.

*Jurisdiction of the Orphans' Court to enquire into Administration Accounts—Laches—Distribution—Code, Art. 93, secs. 138-143 and 230-231.*

So long as assets can be found which properly belong to the estate of a decedent which have not been brought in and accounted for, the estate is not fully closed, and the Orphans' Court on proper application has jurisdiction to compel a surviving executor to return such assets, or recover them when they can be recovered, even where an account, called final, had been passed and some fourteen years had elapsed since such account.

The Orphans' Court has jurisdiction to correct an account within a reasonable time, which depends upon the peculiar circumstances of each case and the character of the correction to be made.

Where the petitioner to the Orphans' Court to have the accounts of a surviving executor enquired into, fourteen years after the passage of a final account, was a married woman when the accounts were passed and distribution made, no *laches* can be imputed to her in respect to the time of her petition filed within fifteen months after becoming a widow.

To make a distribution an entire protection to an executor or administrator, it is necessary that such action be taken and such notice be given as the Code, Art. 93, secs. 138-143, provides to justify the Orphans' Court in making it.

The Orphans' Court under Art. 93, secs. 230-231, of the Code, has authority on application, to determine who are the next of kin, for the purposes of distribution.

APPEAL from the Orphans' Court of Allegany County.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, MILLER, ROBINSON and IRVING, J., for the appellee and submitted on brief for the appellant.

*D. Jas. Blackiston* and *Jas. E. Ellegood*, for the appellant.

*A. Beall McKaig*, for the appellee.

IRVING, J., delivered the opinion of the Court.

The petition of Sarah Wilson, filed in the Orphans' Court of Allegany County, on the 18th of May, 1880, set forth that she was the daughter and heir-at-law of Edward McCarty, deceased, who died in 1849, possessed of large real and personal property, leaving a will by which Isaac McCarty and James McCarty were appointed executors. It alleges that these executors accepted the trust, and took charge of the estate; that one of them, Isaac McCarty is dead, but that James McCarty still lives. The petition further states, that petitioner pending the administration, to wit: in 1852, married one Robert C. Wilson who died in February, 1879, leaving her a widow; and she is now unmarried. The petition charges that the executors passed sundry accounts of their administration, to which reference is made; but that there has never been a full and complete settlement of the estate by the executors or the survivor of them; and that a large amount of debts still remains due the estate, and a large amount of personal chattels unaccounted for. The petition further charges that on the thirty-first day of October, 1854, the executors charged themselves with $30,176,48, which were distributed, but that no part thereof was distributed to the petitioner, although she was entitled to a share of the same. The petition prays that the surviving executor may be required to make a full and particular account of the administration, that there may be a true and correct dis-

tribution, and for further relief. The surviving executor was cited to answer this petition, and show cause why its prayer should not be granted. In his answer he admits the relationship of the petitioner to the testator, and that respondent is the surviving executor of the testator as alleged; but he avers that he has complied with all the requirements of law about the estate, and paid away the estate to those who were supposed to be entitled thereto according to the directions of the Orphans' Court; and that in 1866, in September, he passed a final account, by which it appears, that he had overpaid the estate the sum of $226.72, which had never been refunded to him. The answer denies that there are large debts due the estate unaccounted for, and a large amount of personal chattels belonging to the estate which have not been accounted for. It insists, that the estate has been fully closed by the passage and approval by the Court of the ninth administration account. It denies the jurisdiction of the Orphans' Court to require him to answer the petition, as their citation and order did, or to require from him any further account of the estate whatever.

The case seems to have been heard on bill and answer, and the Court, on 18th of June, 1880, passed an order in which they say : " The Court being of opinion, that they have no jurisdiction to examine into and correct the eighth administration account, are likewise of opinion, that they cannot hear any evidence in the matter of this petition, to show assets in the hands of the defendant unaccounted for or unadministered, and must therefore dismiss the petition *for want of jurisdiction* as to this case." From this order this appeal has been taken.

It appears that the Court has acted wholly on the theory, that no jurisdiction rested in that body to compel the executor to return additional assets which might be in his hands, or to take steps to collect any that existed and had not been collected and returned. It is clear that

the setting down of the case, on bill and answer, was merely to try the question of jurisdiction raised by the answer. It was the plea to the jurisdiction which the answer interposed, which was heard and determined adversely to the appellant. It is evident that the appellant tendered herself ready to sustain the allegations of the petition by proof; for the Court says they "*can hear no proof in the* matter of the petition *to show assets* in the hands of the defendant."

So long as assets can be found, which properly belong to the estate of the decedent, which have not been brought in and accounted for, the estate is not fully closed. If the executors were both dead, on suggestion to the Court, that such assets existed, the Orphans' Court would at once appoint an administrator *de bonis non* to do what was necessary to be done to collect and account for such assets. *Salisbury vs. Black,* 6 *H. & J.,* 297 ; *Hazlett vs. Green,* 7 *H. & J.,* 23 ; *Scott vs. Fox,* 14 *Md.,* 388 ; *Cecil vs. Clark,* 17 *Md.,* 520, and *Neal vs. Charlton,* 52 *Md.,* 495.

In the case now before us one of the executors still lives, and the trust has survived. If, therefore, there be assets which he has not returned, or assets which can be recovered, which he has not recovered, it is not only within the power and jurisdiction of the Orphans' Court to require the executor to discharge his duty, but it is the plain duty of that Court to compel him. This jurisdiction is expressly conferred by the statute. See *Rev. Code, Art.* 50. *secs.* 5, 6, 14 and 15.

The cases of *Jones vs. Sothoron,* 10 *G. & J.,* 187, and *Binnerman vs. Weaver,* 8 *Md.,* 517, upon which the Orphans' Court relied, as establishing its lack of jurisdiction in the premises, are not applicable to a case like this. In *Jones vs. Sothoron,* the property giving rise to the contention consisted of negroes, which had been distributed and actually handed over to the claimants ; and this Court only decided that delivery of specific property

having been made to the distributees, the Orphans' Court could not compel a re-delivery of the specific property to the executor or administrator for the purpose of new distribution. The Orphans' Court in such case could not enforce a change of possession, and a Court of equity had to be invoked. The case of *Binnerman vs. Weaver*, is not more in point. In that case the Court was not called on to consider a question like the one now before us. There the Court only decided that the Orphans' Court had no power to control or enforce a trust created by will.

If other assets were actually in the executor's hands, which he failed to return, or existed, and he had not recovered them, the executor, by passing an account, and calling it a final account, could not preclude inquiry by the Orphans' Court, on proper application, whether he had returned all the assets, and fully discharged his duty in that Court. Even if he, and the Court supposed, when that account was passed, that there were no other assets, the subsequent discovery of them would impose a duty on the executor or administrator, to collect, return, and pass another account, and the Court on proper information should compel him to do so.

Respecting the application to correct the accounts already passed, and the distribution made, we need only say, that the jurisdiction of the Orphans' Court, to correct an account within reasonable time, has been frequently upheld in this Court. What is reasonable time, depends upon the peculiar circumstances of each case, and the character of the correction to be made. *Scott vs. Fox*, 14 *Md.*, 388; *James Stratton's Case*, 46 *Md.*, 559; *Bantz vs. Bantz*, 52 *Md.*, 686. In *Scott vs. Fox*, 14 *Md.*, 388, this Court said: "it is a principle, settled beyond all doubt, that administration accounts are only *prima facie* correct. Their *ex parte* character imperiously requires they should be so. Errors in them have been repeatedly corrected, when made to appear in Courts of law or equity." In

that case an administratrix had passed an account charging herself with the inventory of the estate, according to the appraisement, and all other assets apparently, and claimed credit for debts paid, &c., leaving a balance due the estate. Subsequently she passed a second account, in which she charged herself with this balance, and after claiming credit for costs of administration, she also claimed credit for her own share of the estate, and for payments made to the several children for their shares of the estate in full, except as to one, for which she claimed credit for money deposited in bank to his credit. This account, which was in itself a distribution, was duly passed and approved. This administratrix died, and seven years afterwards application was made to the Orphans' Court for letters *de bonis non,* on the ground, that it appeared by the accounts that the administratrix had taken the personal property at the appraisement, (which was mainly composed of negroes) and that no order of the Orphans' Court was of record, authorizing her to take at the appraisement. It was in proof, that verbally the Court had so directed and authorized her to do. It was claimed that this property had not been administered. The Orphans' Court refused the letters; but this Court reversed that order, and after saying that such verbal authority from the Orphans' Court conferred no right on the administratrix to do as she did, said, "a failure to appeal, within thirty days from the passage of that account, will not have the effect to prohibit an administrator *de bonis non,* from obtaining the correction of any errors which may have been committed in the former administration." If an error of that character could be corrected through administration *de bonis non,* when the administratrix was dead, it is clear, that errors of an executor or administrator in omitting to charge himself with all the assets in his hands, may be inquired into, and corrected in his life-time. The exact particu-

lars, wherein correction is sought, are not disclosed in the petition, and we are, therefore, unable to say whether the particular correction which is desired may be made. We ought, however, to add that the appellant having been a married woman when these accounts were passed, and distribution made, was not *sui juris,* and, therefore, no *laches* can be imputed to her in respect to the time of her complaint.

Respecting the question of correcting the distribution heretofore made, we are unable to pronounce definitely, for there appears to be a will, which is not incorporated in the record. It may be that a question of construction is involved, which may require resort to another forum. We may, and ought to say, however, that so far as the record discloses, the distribution appears to be the act of the executor alone. No proceedings are alleged, or certified to have been taken under secs. 138, 139 and 143 of the Code, Art. 93, so as to make the distribution the act of the Court, which would protect the executor, unless appealed from and reversed. To make a distribution an entire protection to an executor or administrator, it is necessary that such action be taken, and such notice be given, as the statute provides, to justify the Court in making it. This is distinctly decided in *Conner vs. Ogle,* 4 *Md. Chancery Decisions,* in *Hansen vs. Worthington,* 12 *Md.,* 418, and in *Scott vs. Fox,* already cited. It is also decided in *Craufurd vs. Craufurd,* 22 *Md.,* 465, that the Orphans' Court under secs. 230 and 231 of Art. 93, have the authority, on application, to determine who are the next of kin for the purposes of distribution. It does not appear, however, that this was a case of such inquiry, or that such action by the Court was ever invoked; nor that such will be the inquiry on the remand of this case. Upon the remand of the cause, all these questions will be open in the Orphans' Court. We decide nothing on this appeal but the question of jurisdiction, so far as the

record enables us to do so.   The meagre presentation of the case in the record prevents our going further, if other questions could really be regarded as before us.

<div align="right">

*Order reversed, and*
*cause remanded.*