# HAMILTON *v.* SHILLINGTON.

ORPHANS' COURT; APPEALABLE ORDERS; COUNSEL FEES.

1. An order of the Orphans' Court denying a petition by creditors of an estate filed before the estate is finally settled, to vacate a previous order passed without notice to them, allowing the administrators *c. t. a.* counsel fees for services in having the will admitted to probate, is appealable, although passed more than two years after the passage of the first order.

2. Creditors have nothing to do with a contest between the next of kin of a testator and his legatees over the validity of his will; and the Orphans' Court has no power to allow counsel fees for defending the will in such a contest, so far as such allowance will affect the claims of the creditors.

No. 1113.   Submitted December 3, 1901.   Decided January 7, 1902.

HEARING on an appeal by creditors from an order of the Supreme Court of the District of Columbia, holding an Orphans' Court, allowing counsel fees for defending a will, and also from an order denying a petition of the creditors to

vacate such previous order, as having been passed to their prejudice and without notice to them.          *Reversed.*

The COURT in its opinion stated the case as follows:

On March 7, 1893, Annie E. Northcutt departed this life in the city of Washington, leaving a last will and testament bearing date on February 26, 1892, whereby she undertook to bequeath all of her personal estate to a sister, a Mrs. Mira Dugan, and the three children of said sister, and all of her real estate to one Joseph H. McCann; and she appointed Mira Dugan and Joseph H. McCann as the executors of the will. On March 8, 1893, the said Mira Dugan filed the will in the office of the register of wills, and at the same time filed a petition in the Orphans' Court asking, in view of probable delay in the probate of the will, for the appointment of temporary collectors of the estate. The appellees, Joseph Shillington and Edwin Forrest, were named by her for the purpose, and they were appointed.

Thereafter, on March 20, 1893, Mira Dugan filed her petition in the Orphans' Court, praying for the probate of the will; but at the same time filed written renunciations of the executorship by herself and McCann. She asked for letters of administration on the estate, with the will annexed, to be issued to Shillington and Forrest; and she stated the estimated value of the personal property to be $27,750.

Shortly thereafter a caveat to the will was filed by one John McGrane, a brother of the deceased, in which the validity of the will was attacked for fraud, undue influence, want of mental capacity to execute it, and alleged failure of the testatrix to execute it in due form of law. To this caveat Mira Dugan made answer, controverting its statements and defending the validity of the will. No answer was filed on behalf of McCann. Thereupon issues were framed and sent to the Circuit Court for trial; and it was ordered by the court that at the trial the caveator McGrane should hold the position of plaintiff, and that " Joseph McCann and Mira Dugan, named as executors in the last will and testament of deceased, be

named as defendants." At the trial the issues were all found in favor of the caveatees, and the will was sustained.

Subsequently, a second caveat was filed on behalf of one George H. Northcutt, claiming to be a son of the deceased; and upon his behalf further issues, involving the question of his legitimacy, were sent to the Circuit Court for trial. At this trial it was ordered that the caveator George H. Northcutt should act as plaintiff, and "that the caveatees, Mira Dugan and Joseph H. McCann, who are named in the will as executors of said Annie E. Northcutt, should act as defendants." These issues having been found in favor of George H. Northcutt, further issues were requested and granted, identical with those which had been formulated under the caveat of John McGrane; but upon appeal to this court in the names of Mira Dugan and Joseph H. McCann, we held that the verdict of the jury upon the first issues was conclusive also upon George H. Northcutt. 7 App. D. C. 351.

The papers in all these proceedings were signed by the appellees Shillington and Forrest, as attorneys or proctors for Mira Dugan and Joseph H. McCann, without specification as to whether it was on behalf of these last as executors under the will or as legatees and devisees. There is one short paper, however, purporting to be a brief, wherein they sign themselves as "attorneys for executors." There is no paper signed by Mira Dugan personally after her answer to the caveat of John McGrane, and nothing whatever in the record to show any intervention of Joseph H. McCann after the paper in which he formally declined the executorship, other than as may be inferred from the appearance of the appellees for him and for Mrs. Mira Dugan.

On January 17, 1898, the will of Annie E. Northcutt, bearing date on February 26, 1892, was admitted to probate; and the court, acting upon the renunciations of the executorship filed in 1893 by Mira Dugan and Joseph H. McCann, issued letters of administration, with the will annexed, to Shillington and Forrest, who, thereupon as collectors, turned over the personal estate to themselves as administrators.

On January 10, 1899, Shillington and Forrest filed a petition in the Orphans' Court, wherein they alleged that they represented the propounders of the will of the testatrix, and as such representatives had rendered professional services in having the will admitted to probate, to the value of $3,000, which sum they asked to be paid to them out of the estate as compensation for such services. Immediately on the same day the court entered an order making them the allowance for $3,000 which they had prayed. It is not claimed that the creditors of the estate or any other person in interest had notice of the petition or of the allowance made in pursuance of it. On the contrary, it appears that no notice was given to any one. It appears, also, that at this time the personal estate of the deceased had dwindled from $27,750, which was its estimated value at the time of her death, to about $5,000; and that after the deduction from it of this allowance and of other costs and expenses aggregating about $1,000, only the sum of about $1,000 would be left for the creditors of the estate, whose claims, as filed in court, amounted to about $8,500, and nothing whatever for the legatees under the will.

Thereupon, as soon as they were advised of the condition of things, the creditors, on October 14, 1899, filed their petition, wherein they prayed to have the order of January 10, 1899, allowing a compensation of $3,000 to counsel, vacated and set aside, on the ground that the petitioners had no notice of it; that the services rendered were not services to the estate or for its benefit, and that the court had no authority in law to make such allowance. It appeared from the petition that the real estate of the deceased had been sold, and had failed to realize even sufficient to pay the liens upon it, in consequence of which nothing was left therefrom for general creditors; and that, as matter of fact, the allowance made to counsel would come out of the only fund available for the payment of debts, and which in itself was wholly insufficient to pay such debts.

The appellees answered this petition, and in their answer averred that they had acted, in the services rendered by them, for Mira Dugan and Joseph H. McCann, as executors, and

that the allowance to them was proper; and, also, that the petitioners might have known of the order if they had consulted the records of the court.

The court [on May 31, 1901] refused to vacate the order; and thereupon the petitioners appealed to this court both from the original order and from the order refusing to vacate the order of allowance; and it is these appeals that are now before us.

*Messrs. Brandenburg & Brandenburg* and *Mr. William E. Edmonston* for the appellants.

*Mr. J. J. Darlington* for the appellees:

1. That the court may allow withdrawal of renunciations as executors, in a proper case, is shown by the case of *Thomas* v. *Knighton,* 23 Md. 318; and, if it were necessary for present purposes, it might be well contended that the court had, in effect, allowed this in the present case, by the numerous proceedings subsequently pursued in the case in which the executors are recognized as such by the court.

The whole point of the objection, however, disappears, when the provision of the statute for the case of renunciation *by executors* is looked at. Dennis Probate Law, p. 36. We have, in the present case, the propounding of the will by one executor for probate; later, a petition by her that letters of administration, with the will annexed, might issue to Messrs. Shillington and Forrest, accompanied by the filing of a written renunciation by herself and by her coexecutor McCann, followed by a caveat setting up fraud, undue influence and mental incapacity, after which the two executors and the court permit the renunciations to lie dormant and unacted upon, the executors defending the will against both the caveat then filed and the one subsequently presented, and succeeding in establishing the will. It is submitted that the case falls fairly within the principle and reasoning of *Tuohy* v. *Hanlon,* 18 App. D. C. 225.

The circumstance that the executors are also named as beneficiaries in the will is sought to be availed of as giving

color to the proposition that the services rendered by the attorneys were rendered to the executors in their individual capacity and not as executors; and the language of the court in sundry of the orders passed, in which Mrs. Dugan and Mr. McCann are referred to as executors under the last will and testament, is sought to be evaded by the suggestion that these references are merely in the nature of a *descriptio personæ* — apparently in analogy to the rule of commercial paper and the like that, where one signs a promise or undertaking, and adds the word " trustee," " agent," or the like, the latter are at least, *prima facie,* merely *descriptio personæ.* Why *the court* should find it necessary to identify the parties to the suit before it by description of their persons, is not suggested; nor, it is conceived, can the reason of the rule in the case of mercantile paper, bonds and the like be found in any respect applicable. It is, moreover, to be noted that Mr. Mc-Cann was wholly without interest in the proceedings in question, they having taken place before the wills act of 1898, and when the probate or rejection from probate of the will would not have constituted even *prima facie* evidence for or against him in relation to the only property, namely, the real estate, which the will purports to dispose of in his favor.

The question is, at most, one of fact. The court below, in which nearly all the proceedings transpired, has twice decided this question in favor of the appellees, once when the order was passed originally, and secondly upon the application to vacate it. It is respectfully submitted that there is nothing in the record upon which error in the conclusion upon this point reached by the court can be predicated — namely, its decision that, in these proceedings before it, the appellees acted as counsel for the executors. And, if this court is not required by the proofs before it to reverse this decision of the court below, it follows from *Tuohy* v. *Hanlon* that the allowance is merely, and properly, a question of costs, which is not appealable.

2. If appealable, the record shows that the compensation allowed was a moderate and reasonable one, nor was anything offered in opposition except the fact that the estate proved in-

solvent, and that the payment of the necessary and reasonable compensation of counsel largely reduced the dividend which creditors might receive. Until these questions as to the validity of the will were determined, there could be no administration at all, and nothing could have been realized by or paid to the creditors.

It can scarcely be asserted that the claims of creditors are paramount to those of the reasonable and unavoidable expenses of the administration of the estate.

Mr. Justice MORRIS delivered the opinion of the Court:

1. At the very threshold of this case a technical difficulty is presented to our consideration of these appeals. It must be said that it has not been raised by either party, and that it is more technical than substantial. But, inasmuch as our decision in the premises will undoubtedly be drawn into a precedent hereafter, we may not wholly ignore the point.

We have repeatedly held that an order refusing to vacate a final order or decree is not itself the subject of appeal; and hence it might be inferred that the order of the court below in this case, whereby it refused to vacate the order for the allowance of compensation to the appellees, is not such as can be considered by us. And, inasmuch as an appeal taken on June 17, 1901, from an order rendered on January 10, 1899, far exceeds the limitation of time allowed by the rules of this court for the taking of appeals, it might likewise be inferred that this order also has passed beyond the possibility of our supervisory authority. But as the order of January 10, 1899, was confessedly passed without notice to the appellants, whose interests are vitally affected by it, and in fact without notice of any kind to any one, and without opportunity to any one to show cause against it, we cannot regard it as a final order in any proper sense of the term, even if we should not, for want of such notice, regard it as utterly void. At best, it was no more than an order *nisi,* with reference to which the parties in interest had the right to have their day in court some time before the final settlement of the ac-

counts and the distribution of the estate. In view, therefore, of the peculiar circumstances of the case and of the informality of proceedings in the Orphans' Court, we must regard the order which was made on May 31, 1901, and whereby the court refused to vacate the order of January 10, 1899, as being the final order in the case from which appeal may properly be taken to this court.

In this same connection it may be noticed that objection was taken in the court below by the appellees that the appellants came too late with their petition. We find no force in this objection. The law on the subject was fully stated by the Court of Appeals of the State of Maryland in the case of *Bantz* v. *Bantz,* 52 Md. 686, in which it was said:

"As long as the estate is open, that is, not finally closed and settled, the accounts of the executor in the Orphans' Court are subject to revision and correction in respect of any matter discovered to be erroneous. * * * The simple passage of a claim by the Orphans' Court or the passage and approval of an account pertaining to it does not establish the correctness of either.

" Parties interested in the distribution of a deceased's estate may, in a proper way and within a reasonable time, object to the propriety of a claim preferred by the executor of the deceased for services rendered her, although it has been passed upon and allowed *ex parte* by the Orphans' Court and included by the executor in his account."

And in the case of *Wilson* v. *McCarty,* 55 Md. 277, the same court said:

" The jurisdiction of the Orphans' Court to correct an account within a reasonable time has been frequently upheld in this court. What is reasonable time depends upon the peculiar circumstances of each case, and the character of the corrections to be made."

And we ourselves had occasion to hold recently that the matter of the allowance or disallowance of costs and expenses was within the control of the court during the whole period of administration. *Tuohy* v. *Hanlon,* 18 App. D. C. 225.

When, therefore, within the period of administration, the appellant questioned the correctness of the item of allowance

to counsel for services as one of the items of the account to be rendered, they were within their right, and the decision then rendered was one from which appeal to this court could properly be prosecuted.

2. The substantial question of law in this case is whether the court below had any warrant of law to allow the compensation to attorneys which it assumed to allow. The amount of the allowance seems to be excessive in comparison to the estate to be administered; it may be moderate enough in view of the magnitude of the services rendered. With this we need not concern ourselves in the present inquiry. For we have held that, when such compensation is proper to be allowed, the amount of it is usually for the discretion of the Orphans' Court, and that discretion is not to be reviewed upon appeal, except for the abuse of it, as in other cases remitted to judicial discretion. *Tuohy* v. *Hanlon,* 18 App. D. C. 225, and cases there cited. The question for us to consider here is not one of abuse of discretion resulting in an excessive allowance, but whether there was authority of law to make any allowance whatever. And upon this question we are constrained, by what we regard as the very plain provisions of the law, to come to a conclusion directly at variance with that reached by the court below.

It is well settled law, too well settled and too generally recognized to need citation of authorities in support of the proposition, that the estate of a deceased person, immediately upon his death, whether it be realty going to an heir or devisee, or personalty going into the hands of an executor or administrator preliminary to distribution among legatees or next of kin, is charged with a lien for the payment of his debts; and this lien is paramount to all rights of heirs, next of kin, or distributees of the estate, subject only to the proviso that the personal property is the primary fund for the payment of debts, and that recourse is not to be had to the realty until the personal estate has been exhausted, and subject also to the further proviso that the costs of administration of the personalty, therein including the ordinary costs of court and reasonable commissions to the

executor or administrator, are a first charge upon the personal estate and first payable out of its assets; [but] the claims of creditors, to the full extent to which they are just and proper, take precedence of the claims of distributees, even though they should exhaust the estate and leave nothing to these latter. The order of settlement of the personal estate of a deceased person, therefore, whether he has left a will or has died intestate, is: (1) The payment of the cost of administration; (2) The payment of debts; (3) The distribution of the residue between legatees or next of kin.

Whether a deceased person has left a will or has died intestate, is of no consequence whatever in law to the creditors. Whether their paymaster is to be an executor appointed by the testator, or an administrator appointed by the court, is a matter of utter indifference to them. They are only interested to receive from the estate the amount of their just claims; and by whom these claims are paid to them is no concern of theirs. They are not interested in the contests over wills. The question of the validity or invalidity of wills is one which does not concern them and in which they have no right whatever to intervene. It may, perhaps, be well characterized as a disgrace to the condition of our testamentary law, that creditors are oftentimes postponed for years in the satisfaction of their just demands, while legatees and next of kin are engaged in virulent legal strife to determine which of them shall enjoy the residue of the estate after the payment of the debts; for this is all that such strife can mean in law, and this is precisely what has happened in the present case. It would scarcely be unfair to characterize as the addition of insult to injury, that, in addition to such postponement of the satisfaction of their claims, they should also be called upon to pay the costs of such litigation. This also is what has happened in the present case, and what may happen in every case of an insolvent estate. Now, assuredly there can be no warrant of law, or of reason, or of common sense, to require one man to pay the costs of the litigation of two other men, with which he has no connection whatever, other than the un-

fortunate connection, that, in the fund for which they are contending, he has a claim paramount to each and both of them, but which he cannot have satisfied until their litigation has been settled.

The claim in the present case is one for compensation to the attorneys for the establishment of the will of Annie E. Northcutt. The contest was one between the next of kin on one side and the legatees under the will, represented by the executors, on the other side. With this contest the creditors have nothing to do. In law, the result of the contest could neither increase nor diminish their rights, and could neither increase nor diminish the fund out of which their claims were to be paid. Why, therefore, should they be charged with the cost of that litigation?

Unless, therefore, we can bring this allowance of compensation under the head of costs of administration of the estate, it is very clear that it cannot be made a charge against the fund, so far as that fund is necessary for the payment of creditors. But to call it costs of administration does not make it such; it is liable to the same objection by whatever name we call it.

It has been decided that an executor successfully defending a will may be allowed for counsel fees contracted to be paid for such defense. We have even gone farther, and have held in the case of *Tuohy* v. *Hanlon*, 18 App. D. C. 225, that a person named as executor in a paper writing purporting to be a will, who has signified his acceptance of the trust by filing a petition for its probate and who has defended it in good faith, although unsuccessfully, may be allowed for counsel fees expended in such defense. But all these cases were cases between the legatees on the one side and the next of kin on the other; and as between them the charge was held to be a proper item in the cost of administration. We fail to find any case in which the fund necessary for the payment of creditors was charged with such costs. Where the estate is entirely solvent, such a charge necessarily falls on the residuary fund payable to legatees or next of kin, by whatever name it is called; but

where the estate is insolvent, as in the case now before us, the charge, if allowed, would have to be borne by the creditors and paid out of the fund which would otherwise have gone to them, notwithstanding that they had been neither concerned nor consulted in the litigation. To impose such a burden on the creditors is against the fundamental principles of right and justice, and there is no warrant for it in the law.

Undoubtedly there are cases in which, even as against creditors, compensation may be allowed for counsel fees; as where it has been necessary to defend the estate against attack which would have materially diminished or destroyed it, or where it has been necessary to institute legal proceedings to recover assets for the estate. But in all such cases the creditors are equally concerned with those entitled to the residuum, perhaps even more concerned; and it is plain that in such cases compensation may be allowed. But no such case is presented here.

It may be that, in the case now before us, the order for the allowance of compensation to counsel may be permitted to stand as an adjudication of right so far as the legatees or distributees under the will are concerned, and with reference to the possibility of future assets to come into the hands of the administrators. But evidently the present effect of the order is to cut out the creditors in whole or in part; and this, we think, cannot lawfully be done.

The orders appealed from must therefore be *reversed, with costs; and the cause will be remanded to the Supreme Court of the District of Columbia, with directions to vacate said orders, so far as the creditors of the estate of Annie E. Northcutt are concerned, and for such further proceedings therein, according to law, as may be right and just. And it is so ordered.*