Shriver and Dwyer *vs.* State, use of Reister.

*Judgment affirmed.*

(Decided 30th April, 1886.)

WILLIAM L. SHRIVER, and CHARLOTTE DWYER *vs.* STATE OF MARYLAND, use of JESSE C. REISTER.

*Distribution in the Orphans' Court—Sections 134, 138, 139 and 143, of Article 93, of the Code—Administrators— Notice to Parties entitled to Distributive shares or Legacies, or a Residue—Posthumous child—General exception to Prayer—Rule four respecting Appeals—Pleading—Secondary Evidence of contents of Letters—Burden of Proof— Distribution account—Lapse of Time—Presumption of Death—Distribution of Leasehold estate—Laches.*

Unless an administrator in making distribution of his decedent's estate follows one of sections 138, 139, or 143, of Article 93, of the Code, no *ex parte* distribution in the Orphans' Court will afford him protection against a party excluded therefrom.

Section 143, of said Article, declares that "any administrator shall be entitled to appoint a meeting of persons entitled to distributive shares or legacies, or a residue, on some day by the Court approved, and payment or distribution may be there made under the Court's direction and control." In order that the action of the adminis-

Shriver and Dwyer *vs.* State, use of Reister.

trator under this section may be a bar to the claim of a distributee unknown to him at the time when the distribution is made, he must show that the meeting was duly appointed, notice of some kind given to the parties interested, and the case presented to and acted upon by the Court.

A posthumous child of the brother of an intestate, is not a "posthumous relation," of the intestate, within the meaning of section 134, of Article 93, of the Code, unless born after the death of the intestate.

The meaning of the section is, that children of an intestate born after his death shall take in the same manner as if born before his death; but no other relation born after his death shall be entitled to take as distributee in his own right.

A mere general exception that a prayer assumes certain facts without pointing out what the facts so assumed are, does not gratify the fourth rule respecting appeals.

Pleas that amount simply to pleas of general performance are bad, where the suit is on a bond with collateral conditions, and the breaches are assigned in the declaration.

The fact that an administrator has paid away "a large amount" of the assets in discharge of the debts of the decedent, is no bar to an action by a distributee, and a plea to this effect is bad on demurrer.

Proof by a witness that certain letters were once in existence, and that she had made diligent search for them in all proper places, but had not been able to find them, is a sufficient foundation to let in secondary evidence of their contents.

Where the brother of an intestate, if living, or his descendants, if he be dead leaving descendants, would be entitled to one-fourth part of the intestate's estate, the *onus* is upon a plaintiff suing for a distributive share of the estate, to prove, in order to entitle him to a third of the estate, that the brother died before the intestate leaving no children or descendants; and if he fails to prove this, he can recover only one-fourth.

The distribution account is *prima facie* evidence against the administrator and his sureties as to the amount thereby distributed, but the recital therein as to who the intestate left "as distributees thereof," cannot be invoked to aid the plaintiff's case.

Where the suit was brought in the year 1884, and the brother was proved to be alive in 1839, the mere lapse of time since 1839, is not sufficient to raise the presumption of his death.

Shriver and Dwyer *vs.* State, use of Reister.

If there had been proof that he had never been heard of by any of his family, or had never communicated with them since 1839, the case would be different.

In the absence of such proof, the presumption that he is still living must prevail.

The law does not presume that a person who is proved to be dead, left no children or descendants.

Where leasehold property has been distributed *in specie* by the administrator of an intestate, the remedy of a distributee who has been left out of the distribution, is an action of ejectment to recover his share of the specific property, and not an action on the administrator's bond to recover his share of its appraised value.

His neglect in not asserting his claim at the proper time, whereby other parties have received the rents and profits which he cannot now recover in the action of ejectment, affords no reason why the obligors and sureties on the administrator's bond should be made liable for the appraised value of the property, in the same manner as if the administrator had sold it and erroneously distributed the proceeds.

APPEAL from the Circuit Court for Baltimore County.

The case is stated in the opinion of the Court. Charles E. Lanver, one of the administrators of Margaret Reister, deceased, and Samuel A. Lanver, one of the sureties on the administration bond, were not joined as defendants in the action, for the reason that they did not reside in Baltimore County. A verdict was rendered for the plaintiff for $1,816.91, and judgment was entered accordingly.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, ROBINSON, IRVING, RITCHIE, and BRYAN, J.

*D. G. McIntosh,* for the appellants.

*Edward N. Rich,* for the appellee.

MILLER, J., delivered the opinion of the Court.

In this case the suit is upon an administration bond. The record is meagre and in some respects defective, but

we gather from it the following facts which appear to be undisputed:—

Margaret Reister, of Baltimore County, died in 1877, intestate, and letters of administration upon her personal estate were granted to William L. Shriver and Charles E. Lanver, who gave bond with Charlotte Dwyer and Samuel A. Lanver as sureties thereon. The intestate was unmarried, and left neither children nor descendants, nor father nor mother surviving her, and the distributees of her estate were, therefore, her surviving brothers and sisters and the children or descendants of deceased brothers and sisters. *Code, Art.* 93, *sec.* 128. In her life-time the intestate had four sisters and two brothers, Jesse and James. Two of her sisters died when she was living, and left no children or descendants, while the other two sisters survived her, and to these two surviving sisters the administrators distributed the personal estate as sole distributees thereof.

The plaintiff in this action is Jesse C. Reister, who claims to be a legitimate son of Jesse Reister, one of the brothers of the intestate, and therefore her nephew. The proof adduced in support of this relationship is to the effect, that the two brothers, Jesse and James, left their home in Baltimore County, between the years 1833 and 1837, and removed to one of the Western States; that Jesse was married in Cincinnati in January, 1839, lived with his wife for about ten years until his death, and had several children, all of whom died without issue except the plaintiff; that the said Jesse died in July, 1849, of cholera, and that the plaintiff was born in February, 1850, and was therefore a posthumous child; that though there had been some correspondence after he left this State and after his marriage, between the said Jesse and his wife, and one of his sisters in Maryland, yet shortly after, or about the time of his death, such correspondence ceased, and there was no intercourse of any sort between the families until

Shriver and Dwyer *vs.* State, use of Reister.

the appearance of the plaintiff to claim a share of this estate of his deceased aunt. As to the other brother, James, all that the proof shows is that he visited his brother, Jesse, in Cincinnati, about the time of the latter's marriage in January, 1839.

The suit was instituted in November, 1884, less than twelve years after the date of the bond. The plea of limitations could not, therefore, be interposed, and upon the assumption that the plaintiff is the legitimate son of a deceased brother of the intestate, or that a jury would so find from the evidence above stated, we are clearly of opinion he can maintain the suit and recover, unless one of the two defences relied on by the administrators as a bar to the action is valid, and these we must now consider.

1st. The administrators contend they are protected by the distribution made in the Orphans' Court. The only proof on this subject, apart from the distribution account itself, is to the effect that the acting administrator sought and followed the instructions of the Orphans' Court, acted under its orders, and did all he thought he could or knew how to do, to distribute the estate properly; that he married a connection of the family, but knew nothing of James or Jesse Reister, except that he heard they had died in the west, and that he never heard of the plaintiff until he appeared in Reisterstown in August, 1884. But there is nothing to show that the distribution was made either under *sec.* 138 or 139, or 143 *of Art.* 93 *of the Code.* The administrators do not appear to have proceeded under either of these provisions, and the law is thoroughly well settled, that unless one of these sections is followed, no *ex parte* distribution in the Orphans' Court will afford protection to the administration against the claim of a party excluded therefrom. *Conner vs. Ogle,* 4 *Md. Ch. Dec.,* 450; *Hanson vs. Worthington, et al.,* 12 *Md.,* 441; *Scott vs. Fox,* 14 *Md.,* 396; *Donaldson's Ex'rs vs. Raborg, Adm'x,* 28 *Md.,* 56; *Wilson vs. McCarty,* 55

*Md.*, 283. The last of these sections is the one immediately applicable to this case, and it declares that any "administrator shall be entitled to appoint a meeting of persons entitled to distributive shares or legacies, or a residue, on some day by the Court approved, and payment or distribution may be there made under the Court's direction and control." In reference to this provision the Court in *Conner vs. Ogle* say, "in most cases an administrator would be safe in acting under that direction and control; but he must show that the meeting was duly appointed, notification of some kind given to the parties interested, and the case presented to and acted upon by the Court." Nothing of the kind appears to have been done in the present case, and the distribution relied on is clearly no bar to the plaintiff's claim.

2nd. The next defence is founded upon section 134, which, while it allows posthumous children of an intestate to take in the same manner as if they had been born before the decease of the intestate, declares ".that no other *posthumous relation* shall be considered as entitled to distribution in his or her own right." The contention is that as the plaintiff is a posthumous child, because born after the death of his father, he is therefore a "posthumous relation" to his aunt within the meaning of this section, though he was in fact born more than twenty-five years before her death. But we do not so construe this section. What the section means is simply this, that children of an intestate born after his death shall take in the same manner as if born before his death, but no other relation born after his death shall be entitled to take as distributee in his own right. The same idea is more clearly and accurately expressed in the corresponding provision in the Inheritance Law (*Code, Art.* 47, *sec.* 25), which declares that "no right in the inheritance shall accrue to or vest in any person *other than* children of the intestate, and their descendants, unless *such person is in being*, and capable

in law to take as heir *at the time of the intestate's death*, but any child or descendant of the intestate, born after death of the intestate, shall have the same right of inherit-ance as if born before the death of the intestate." We take it, therefore, to be very clear that the plaintiff, who was *in esse* long before his aunt's death, is entitled to a dis-tributive share of her estate, whether he was born before or after his father's death, provided the father himself died before the intestate, as the proof shows was the case.

It follows from what we have thus said, that the Court below was right in its rulings upon all the defendant's prayers except the third, and also in granting the plain-tiff's first and fourth prayers. It has been objected to the plaintiff's first prayer, that it assumes *the fact* that the intestate died leaving *no father.* It certainly does assume this fact, but the exception taken to it in the Court below is not sufficient to raise that question in this Court. A mere general exception that a prayer "assumes certain facts," without pointing out what the facts so assumed are, does not gratify the fourth Rule Respecting Appeals. If the fact so assumed had been pointed out in this case, the prayer could have been easily corrected in that particular in the trial Court. Nor was there any error in sustaining the demurrers to the defendant's first, second and fourth pleas. The first and second amount simply to pleas of general performance, and these are bad where the suit is on a bond with collateral conditions, and the breaches are assigned in the declaration. The fourth is also plainly defective, because the fact that the administrators paid away "a large amount" of the assets in discharge of the debts of the decedent is no bar to the action. If they had so paid away "all the assets," they would have had a good defence, and this they set up in their third plea, to which there was a replication and issue, but they offered no proof to sustain it. The objection to the return of the commission under which the testimony in Cincinnati was

taken has been very properly abandoned. We are also of opinion the Court was right in refusing to withdraw from the jury so much of the testimony of Phoebe Wright, as refers to the contents of certain letters which her husband had received from his sister. The testimony, as stated in the record, is somewhat obscure on this point, but, as we read it, the witness proves that such letters were once in existence, and that she had made diligent search for them in all proper places, but had not been able to find them. We think there was a sufficient foundation laid to let in secondary evidence of their contents.

This leaves for consideration the question presented by the defendants' third and the plaintiff's second prayer. The plaintiff contends he is entitled to recover *one-third* of the estate unless the other side show that James, the other brother of the intestate, is living, or has died leaving children or descendants surviving him, while the defendants insist that in order to entitle him to a *third*, the *onus* is upon the plaintiff to show that James died before the intestate, leaving no children or descendants, and if he fails to show this he can recover only one-fourth. In our opinion, the position taken by the defendants is correct. This is a suit upon the administration bond and the plaintiff seeks to recover against the obligors a *specific share* of the estate which he contends the administrators have wrongfully distributed to other parties. Clearly the *onus* is upon him to make out his title to the share he thus claims. The distribution account is *prima facie* evidence against the defendants as to the *amount* thereby distributed, but we do not see how the recital that the intestate left her two surviving sisters "as distributees thereof," can be invoked to aid the plaintiff's case. He was bound to show that the distribution was wrong in excluding him, and he is equally bound to show that it was so far wrong as to exclude him from receiving the particular share of the estate which he claims. Besides, upon the proof which

he himself has offered, the presumption is, that the brother, James, is still alive. The plaintiff has proved that he was alive in Cincinnati in January, 1839, and this is *all* the proof as to whether he was alive or dead in 1877, when the intestate died, or indeed as to whether or not he is still living. Mere lapse of time since 1839 is not sufficient to raise the presumption of his death. Where a right is dependent upon the death or life of a party, this Court, in *Hammond's Lessee vs. Inloes,* 4 *Md.,* 174, has said: "The death of a person may be presumed after a long lapse of time, as was done in *Doe on the demise of Oldnall vs. Deakin and Wooley,* 3 *Carr. & Payne,* 402, where the person who was said to be dead, would, if alive, have been one hundred and fifty years old; but when persons are known to have survived ninety and a hundred years, we cannot say that others have died at an earlier age without some evidence on the subject." If there had been proof that he was never heard of by any of his family or had never communicated with them since 1839, the case would have been different. Speaking upon this subject, TILGHMAN, C. J., in *Miller vs. Beates,* 3 *Sergt. & Rawle,* 493, says, "when a man has been proved to be living, the first general presumption is, that he continues to live unless the contrary be proved; the proof of death is therefore on the party who asserts it. But there may be circumstances which destroy the first general presumption and induce a contrary presumption, namely of death; and in such cases the burden of proving life will be thrown upon the party who asserts it. For instance, although a person who has been from Philadelphia to France, may be presumed to be living, although he has not been heard of for several years, because such things commonly happen; yet, when many years have elapsed without hearing from him, and no circumstances are shown by which this may reasonably be accounted for, it is so contrary to general experience that he should be living, that the jury may

and ought to presume his death." So Lord MANSFIELD in *Rowe vs. Hasland*, 1 *Wm. Bl.*, 404, says, "in establishing a title by pedigree, when it may be necessary to lay a branch of the family out of the case, it is sufficient to show that the person has not been heard of for many years, to put the opposite party upon proof that he still exists." These authorities are cited with approval in *Thomas vs. Visitors of Frederick County School*, 7 *G. & J.*, 386, 387. Chancellor BLAND, in *Tilly vs. Tilly*, 2 *Bland*, 444, de- cided that "the general rule is, that any one who has not been heard of for the space of seven years, may for all legal and equitable purposes be presumed to be dead. Therefore in this instance, the death of Horatio Tilly may be assumed to have happened just seven years after the day on which it is shown by the proof that he was last heard of." This general rule is also stated in the same terms in *Best on Presumptions*, sec. 140. But as we have said, there is no proof to bring the present case within this rule ; for there is no proof that James Reister was never heard of by his family or relatives after 1839. In the absence of such proof, the presumption that he is still living must prevail. Again, neither direct nor presump- tive proof of his death will, of itself, suffice to establish the plaintiff's claim to a third of this estate. It must be followed up by some evidence from which a jury will be allowed to infer that he left no children or descendants. As was said in *Hammond's Lessee vs. Inloes*, "the law does not presume that a person who is proved to be dead, left no heirs," nor we may add, that he left no children or descendants. There must, therefore, be some additional proof, direct or presumptive, on this subject also, adduced by the plaintiff before he can recover a third. As the proof stands in the record, he is only entitled to a fourth. His recovery of a third will afford no protection to the defendants against a similar action by James Reister or his children or descendants. For these reasons we are

clearly of opinion, there was error in granting the plaintiff's second, and in rejecting the defendants' third prayer.

But there is also another fatal defect in the plaintiff's second prayer. It asserts that he is entitled to recover one-third "of the amount" distributed by the distribution account. That account shows that $1300 of this amount consists of the appraised value of permanent leasehold property in the City of Baltimore. There is nothing to show that this property was ever sold by the administrators and converted into money. On the contrary, the account plainly shows a distribution of it *in specie.* The distribution is to each of the distributees of "an undivided one-half interest in a lot of ground and improvements on the west side of Calhoun street, 62 feet south from Presstman street in the City of Baltimore, $650." It is true, that the title to such leasehold property vests in the administrator and must be administered by him in the Orphans' Court. But there is a broad distinction between this species of property and horses, stock, farming implements and other chattels personal or movable. Leasehold interests held under perpetual leases, such as have prevailed in the City of Baltimore, are fixed and permanent in their character, are subject to liens of judgments in the same manner as real estate, and like real estate may be sued for and recovered in an action of ejectment. There is nothing to prevent the plaintiff from now recovering his interest in this property in such an action. The erroneous distribution in the Orphans' Court has neither divested his title thereto, nor placed any barrier in the way of such recovery, that he would not have had to encounter if no such distribution had been made. In fact we are unable to perceive, how, with respect to this property, he has been in any way injuriously affected by the distribution of which he now complains. The property itself has not thereby been removed, changed or disturbed, and so far as his title to it is concerned, it remains in the same condition as it was at

the death of his aunt. According to his own proof, he was then twenty-seven years of age, and if other parties, (whether distributees under the account or not, is immaterial,) have received rents and profits which he cannot now recover in ejectment, it is attributable solely to his own neglect in not having come forward and asserted his claim at an earlier period. This neglect on his part surely affords no reason why the obligors and sureties on this bond, should be made liable for the appraised value of this property, in the same manner as if the administrators had sold it and erroneously distributed the proceeds.

*Judgment reversed, and new trial awarded.*

(Decided 30th April, 1886.)