# POSEY *v.* HANSON.

EJECTMENT; COLLATERAL DESCENT; EVIDENCE; PRESUMPTION OF DEATH; DECLARATIONS TO PROVE RELATIONSHIP; ADMISSIONS; PRIVILEGED COMMUNICATIONS.

1. The plaintiffs in ejectment must recover upon the strength of their own title, and cannot rely upon the weakness of that of their adversary.

2. In ejectment where the plaintiffs claim as descendants of the maternal grandfather of the person last seized, relying upon a failure of nearer lines of descent, the testimony of certain members of the family that decedent had a sister whom they had seen thirty-five or forty years before, that she was then reputed to be married and to have a child or children, is properly submitted to the jury as tending to show that such sister was a married woman.

3. In such a case, a prayer for instructions by the plaintiffs which shifts the burden of proof to the defendant and requires him in order to defeat the plaintiffs' recovery to prove that the children of the sister of the decedent were living, or had descendants living, is properly refused. In ejectment the plaintiffs must remove every possibility of title in another person in the line of descent before they can recover, no presumption being permitted against the person in possession.

4. And a prayer by the plaintiffs, in such a case, for an instruction to the jury that as the children of the sister of the decedent had not been heard of for more than thirty-five years, the law presumed their death, is properly refused; the burden of proof being upon him who asserts the death of a person standing in the way of his inheritance; and a person once shown to exist will be presumed to be living for such time at least as is not contrary to the rule of nature in respect of the duration of human life.

5. Where a person has left his home or place of residence and has neither been heard of nor from for a period of seven years, he may be presumed to be dead; but to raise this presumption there must be some proof of inquiry of the persons and at the places where news of him, if living, would most probably be had.

6. But the law does not presume that a person proved to be dead left no children or descendants; and where a claim to land depends upon the death of such person and the extinction of

the line of descent from him, a foundation must first be laid by showing some inquiry and attempt to trace the missing persons.

7. The testimony of a witness in an ejectment suit in which the existence of a sister of the person last seized or her children or descendants is in issue, that many years before the witness had heard of two children of the sister passing through Washington, and had heard of it at the house of the decedent, is not inadmissible because the witness could not state from whom she had acquired the information. That it may have come from some person not related to the parties by blood or marriage does not impair the competency of the evidence.

8. An error which does not operate to the prejudice of the party complaining of it, is not reversible error.

9. Where it is sought by one party to a suit to use an affidavit made by the other party as an admission, it is proper for the affiant to be allowed to explain the circumstances under which the affidavit was made in order that the jury may determine the proper weight to be given it.

10. Under R. S. D. C., Sections 876, 877, a widow, in a suit against her, involving her title to property, is at liberty, although not compellable, to disclose communications made to her during marriage, by her husband.

11. Where in ejectment the plaintiffs claim as descendants of the maternal grandfather of the person last seized, and to recover they must show that there are no descendants of the paternal grandfather, while testimony of witnesses related to the decedent on the mother's side that they had never heard of any descendant from the paternal grandfather may be sufficient to authorize the jury to presume a want of such descendants, it is not error on the part of the trial court to refuse an instruction for the plaintiffs that such presumption is one of law.

12. Where a paragraph in the answer of the defendant to a bill in equity in a suit for partition is sought to be used against her in a suit at law involving her title to the property in contro versy, as an admission against interest, she will be entitled to have all that she said in her answer, in immediate connection, considered by the jury. .

13. An answer to a bill in equity, even when sworn to by the defendant as "true to the best of her knowledge and belief," is admissible in evidence in a suit at law as an admission merely, and cannot operate as an estoppel.

No. 640. Submitted February 16, 1897. Decided April 6, 1897.

HEARING on an appeal by the plaintiffs from a judgment on verdict in an action of ejectment. *Affirmed.*

10 Ct. App.—33

The COURT in its opinion stated the case as follows:

This is an action of ejectment brought by the appellants, Francis G. Posey, Serena B. Williams, Louisa Edwards and others, who claim to be heirs at law of Andrew Hanson, deceased, against his widow, Julia Hanson, to recover the possession of a part of certain parcels of lands in the city of Washington.

Andrew Hanson married said Julia in 1840, and at the time of his death, A. D. 1875, was in possession of the premises under title conveyed by two deeds dated, respectively, January 20, 1848, and December 21, 1863. He died, leaving a will dated June 26, 1847, wherein he devised and bequeathed to his said wife Julia all of his estate of every kind and description.

Under the law in force in the District of Columbia at the time of his death, as well as at the time of the execution of his will, it did not operate upon lands acquired by the testator after its execution.

The appellants, claiming through descent from certain sisters of the mother of Andrew Hanson, first filed a bill in equity against Julia Hanson, praying partition of the premises.

On March 5, 1895, an order was entered in that suit staying further proceedings, to await the result of an action of ejectment to be brought by the complainants to determine the question of title. A stipulation was at the same time made and confirmed which provided that the evidence that had been taken should be used on the trial at law. This action was then immediately begun in compliance with that order.

It is conceded that Andrew Hanson died without issue, and leaving neither father nor mother surviving. Under the Maryland act of 1786, regulating descents, which is still in force in the District of Columbia, the plaintiffs, claiming as descendants of the maternal grandfather of Andrew Hanson, could only inherit in case he died leaving no

brother nor sister, or descent thereof, and no living descendant of his paternal grandfather. Their right depends upon the failure of those lines respectively.

The jury found for the defendant, and from the judgment entered thereon the plaintiffs have appealed.

The errors assigned, twenty-nine in number, are founded on exceptions taken to the admission and exclusion of evidence and to certain instructions to the jury given and refused.

*Mr. Franklin H. Mackey, Mr. F. T. F. Johnson* and *Mr. E. H. Thomas* for the appellants:

1. The testimony of the witness Pleasants that she had heard of two children of Jane Willis passing through Washington, as slaves, during the war of the rebellion, should have been stricken out. No member of the family saw or recognized them, and the fact that they were seen at all depends upon the report of an unknown and unidentified person, who may be alive, and who did not himself see them. It was not shown independently by any witness or by any fact that such persons claimed to be the children of Jane Willis, or were in any manner recognized by her as her own or by any member of the family whomsoever. *Blackburn* v. *Crawford,* 3 Wall. 185; *Nims* v. *Thompson,* 83 Wis. 261.

If the declarant be himself alive and capable of being examined (even if a member of the family), his declarations will be rejected, and consequently it lies upon the party who seeks to avail himself of this species of evidence to prove the declarant's death. 1 Taylor Ev. (Blackstone Ed.), Sec. 641, p. 565.

2. The testimony of a married woman as to statements made to her by the husband concerning his pedigree should be excluded, although he is dead at the time of trial. *Brooks* v. *Francis,* 3 MacA. 109. See also 19 Am. & Eng.

Encyc. L. 152; 1 Wharton Ev., Sec. 431; *Stien* v. *Bowman,* 13 Pet. 223.

3. Both cohabitation and reputation are necessary to establish a presumption of marriage where there is no proof of actual marriage. 1st Bishop on M. & Div., Sec. 266 ; *Commissioner* v. *Stump,* 3 P. F. Smith (Pa.), 132; *Dysart Peerage Case,* L. R. 6 App. Cases, 514; see also *DeThoren* v. *Atty. Gen.,* L. R. 1 App. Cases, 686; *Blasini* v. *Blasini,* 30 La. An. 1388.

4. A judicial admission by a party in one suit estops him from setting up a contrary claim in a subsequent suit. Herman on Estop., Vol. 2, p. 947 ; Bigelow on Estop. 722. Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. *Railway Co.* v. *McCarthy,* 96 U. S. 267.

5. The plaintiffs could not, by any possibility, have shown affirmatively the existence of such negative facts as that the paternal grandfather of Andrew Hanson was not living. The law presumes his death.

Proof by one of the family that a younger brother of the person last seized had many years before gone abroad, and that the repute of the family was that he had died there, and that the witness had never heard in the family of his having been married, has been admitted as good *prima facie* evidence of such person's death without lawful issue.

General repute in the family, proved by the testimony of a surviving member of it, has been considered as falling within the rule. *Doe* v. *Griffin,* 15 East, 293; *Diggs* v. *Wormley,* 21 D. C. 477; *Jennings* v. *Webb,* 8 App. D. C. 43.

*Messrs. Webb, Webb & Lindsley* for appellees:

1. A plaintiff must remove every possibility of title in another person before he can recover, no presumption being admitted against the person in possession. *Richards* v.

*Richards,* 15 East, 293; *Hammond's Lessee* v. *Inloes,* 4 Md. 175; *Elwood* v. *Lannon,* 27 Md. 209; *Sprigg* v. *Moale,* 28 Md. 506; *Shriver* v. *State,* 65 Md. 285; *Kelso* v. *Stigar,* 75 Md. 404; Greenleaf on Evidence, Secs. 308, 309; *Anderson* v. *Smith,* 2 Mack. 278, 283.

"The law resorts to hearsay testimony in cases of pedigree, but the rule of admission is restricted to the declarations of deceased persons who were related by blood or marriage to the person, and, therefore, interested in the succession in question. And general repute in the family proved by the testimony of a surviving member of it has been considered as falling within the rule." Greenleaf on Evidence, Vol. 1, Sec. 103; *Blackburn* v. *Crawford,* 3 Wall. 187; *Doe* v. *Griffin,* 15 East, 293; *Cooper's Admr.* v. *Pearce,* 7 Gill, 264.

2. The appellants have not shown the marriages necessary to prove their title. Nothing is to be taken for granted, or is to be presumed to establish the plaintiff's right; he must establish the marriage of the common ancestor and the other marriages necessary to complete his title. . 2 Greenleaf on Evidence, Sec. 309; *Richards* v. *Richards,* 15 East, 293.

The most liberal decisions require that some evidence showing that the persons, alleged to have been married, lived together as husband and wife, or that they recognized each other as such, should be offered. *Green* v. *Norment,* 5 Mack. 85; *Thomas* v. *Holtzman,* 18 Mack. 68; *Diggs* v. *Wormley,* 21 D. C. 484; *Investment Co.* v. *Garrett,* 3 App. D. C. 77.

3. The testimony of Frances Pleasants was properly admitted. It tends to show common repute in the family concerning the children of Jane Willis. *Doe* v. *Griffin,* 15 East, 293 and note; *Elliott* v. *Piersoll,* 1 Pet. 328; Taylor on Ev., Vol. 1, Sec. 639; *Morgan* v. *Purnell,* 4 Hawkes (N. C.), 95; *Monkton* v. *Attorney General,* 2 Russ. & M. 165.

4. The appellants, claiming as the heirs of Andrew Hanson, must not only prove their relationship by affirmative evidence, but remove every possibility of title in another per-

son, before they can recover. *Richards* v. *Richards*, 15 East, 293; *Sprigg* v. *Moale*, 28 Md. 506.

5. The appellee had the right to read the whole or any part of Thornton's deposition, because the appellants introduced it and read part of it in their own behalf. This entitled, the appellee to read the rest of it. *Forrest* v. *Forrest*, 6 Duer, 132; *Gellatty* v. *Lowery*, 6 Bosw. 113; *Van Horn* v. *Smith*, 59 Iowa, 148; *Southwark Ins. Co.* v. *Knight*, 6 Whart. 327; *Citizens Bank* v. *Rhutasel*, 67 Iowa, 319.

6. The communications between the appellee and her husband were of no importance and did not in any way prejudice the appellant's case. Both of these communications were about matters of general reputation in the family and were discussed by other members of the family, as well as the appellee and her husband. They are therefore admissible as evidence. *Doe* v. *Randall*, 2 M. & P. 20; *Robb's Appeal*, 98 Pa. St. 503; *Cornell* v. *Vanartsden*, 4 Burr. 364.

7. The mere fact that a person has not been heard of for many years does not authorize the presumption that he is dead, unless such absence is from his domicile. A person shown not to have been heard of for seven years by those (if any) who, if he had been alive, would naturally have heard from him, is presumed to be dead, unless the circumstances of the case are such as to account for his not being heard of without assuming his death. *Davie* v. *Briggs*, 97 U. S. 628; *Spencer* v. *Moore*, 11 Ired. 160; *Vought* v. *Williams*, 120 N. Y. 253; 1 Am. & Eng. Ency. 39; *Sensenderfer* v. *Pacific Ins. Co.*, 19 Fed. 68.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The chief points of contention in the case, and upon which it was evidently made to turn, arise on the admission of certain evidence and the charge of the court in respect of the issue raised as to the existence of a sister of Andrew Hanson, called Jane Willis, and the existence and survival of her issue.

Three witnesses testified that Andrew Hanson had a sister called Jane. These witnesses—Eliza Posey, Mary Queen, and Francis Pleasants—were all descendants of the maternal grandfather of Andrew Hanson, and therefore entitled to claim a part of the land in controversy in the same right with the plaintiffs. Eliza Posey was called by the plaintiffs, and said that Andrew Hanson had a sister called Jennie, whom she had once seen more than forty years before, when witness was a child. She did not know Jane had married or had children.

Mary Queen, a woman 77 years old, who was a grand-niece of Andrew Hanson's mother, Henrietta, knew Jane Hanson, or Willis, who lived in Charles County, Maryland. Saw her when she visited her mother, Henrietta Hanson, with whom Andrew Hanson was then making his home. On the last visit Jane had an infant with her, possibly two or three years old. It was carried about in her arms.

Frances Pleasants, a younger sister of Mary Queen, knew Jane Willis well, and saw her visiting the home of Andrew Hanson and his mother, by both of whom she was recognized as a sister and daughter, respectively. She was reputed married to one Willis, and had one child, that witness saw, and she heard of another. Andrew Hanson told her that Jane died in Baltimore after undergoing an operation for cancer. She heard her aunt, Lucy Duckett, who lived in Charles County, Maryland, where Jane Willis lived, speak of her marriage and birth of children. Lucy Duckett seems to have been an ancestor of one or more of the plaintiffs.

The defendant, Julia Hanson, also testified that Andrew Hanson had a sister Jane.

There was no other direct evidence on the point. Some witnesses for plaintiff said they had never heard of a sister of Andrew Hanson. That he had a sister, called Jane, or Jennie, was virtually conceded, however, in the instructions

asked by the plaintiff, the refusal of which has been assigned as error.

(1) The first of these instructions (No. 3 of record) is :

"The jury are instructed that there is no evidence in this case tending to show that the alleged sister of Andrew Hanson was ever married, and as her death is conceded they must find for the plaintiffs if they believe from the evidence they are the heirs at law of Andrew Hanson."

It was not error to refuse this instruction. The evidence was sufficient to require submission to the jury, and sufficient, also, considering the natural difficulty in obtaining direct evidence of marriage in such cases, especially after such great lapse of time, to warrant the jury in finding that Jane Willis was a married woman. *Jennings* v. *Webb*, 8 App. D. C. 43; 1 Taylor Ev., Sec. 578.

The same strictness of proof invoked herein by the plaintiffs would be fatal to their own case if applied to the evidence of their legitimate descent from the maternal grandfather of Andrew Hanson.

(2) Plaintiffs were put upon proof of their own title, and upon its strength alone depended their right to recover. *McNitt* v. *Turner*, 16 Wall. 352, 362. They are not aided by any weakness or want of title on the part of the defendant. The rule given in the charge to the jury, in respect of the burden of proof resting upon the plaintiff throughout the case, is the same that has always prevailed in Maryland in cases arising under the same statute. It is thus laid down in a well considered case by the Court of Appeals of that State :

" It was incumbent upon the lessors of the plaintiff claiming as they do by collateral descent, to show who was last legally seized of the land in controversy, and then to prove his death, without issue; and next to prove all the different links in the chain of descent, which will show that the person last seized and the claimants descended from some com-

mon ancestor, together with the extinction of all those lines of descent which claim in preference to the lessors of the plaintiff. They must prove the marriages, births and deaths; and the identity of persons necessary to fix title upon themselves to the exclusion of others who would have, if in existence, a better title to the land sought to be recovered." *Sprigg* v. *Moale*, 28 Md. 497, 505. See, also, *Shriver* v. *State*, 65 Md. 278, 287 ; *Kelso* v. *Stigar*, 75 Md. 378, 404.

It was also said in those cases: " The plaintiff must remove every possibility of title in another person in the line of descent before he can recover; no presumption being admitted against the person in possession." The foregoing rule is reasonable and well supported by authority. 1 Greenleaf Ev., Sec. 41 ; 2 Id., Sec. 309.

The instruction asked by plaintiffs (No. 4, record)* was rightly refused because it conflicted with this rule. Its effect was to shift the burden of proof to the defendant, and require her, in order to defeat plaintiff's recovery, to prove that the children of Jane Willis were living, or that they had living descendants.

(3) There was no error in refusing the two next instructions asked on this point (No. 5 and 13, record),† which informed the jury that as the children of Jane Willis had not

---

* " 4. The jury are instructed that the burden of proof is on the defendant, if she claims that any of the children of Jane Willis are alive, to establish that fact by satisfactory evidence, and also to establish by like evidence the identity of said children, and that there is no evidence in this case even tending to show that they are alive."

† " 5. The jury are instructed that the alleged children of Jane Willis not having been shown by any evidence in this case to have been heard from for over thirty-five (35) years since they were last heard of, the law presumes that they are dead and the jury must so regard them.

" 13. The presumption of law in this case is that Jane Willis and her children, if any she had, are dead, and also that the brothers and sisters and their issue, if any there were, of Andrew Hanson's father are dead, and the jury must so find."

been heard from for more than thirty-five years, the law presumes their death.

As we have seen, the burden of proof is upon him who asserts the death of a person standing in the way of his inheritance. And a person once shown to exist will be presumed to be alive for such time, at least, as is not contrary to the rule of nature in respect of the duration of human life. 1 Greenleaf Ev., Sec. 41.

It is well settled that where a person has left his own home or place of residence, and has neither been heard from, nor of, for a period of seven years, he may be presumed to be dead. *Hamilton* v. *Rathbone,* 9 App. D. C. 48. But to raise this presumption there must be some proof of inquiry made of the persons and at the places where news of him, if living, would most probably be had. *Shriver* v. *State,* 65 Md. 278, 287; *Inhabitants of Hyde Park* v. *Inhabitants of Canton,* 130 Mass. 505, 507; *Flynn* v. *Coffee,* 12 Allen, 133; Lawson, Presumptive Ev., Sec. 237; 2 Wharton Ev., Sec. 1274.

The case of plaintiffs evidently proceeded upon the assumption that if Jane Willis ever existed, she had no legitimate issue. The record shows no inquiry made for these children, or their descendants, at the old home of their mother and father in Charles County, Maryland, or anywhere else. The time since they were last seen or heard of is not long enough to warrant the presumption of their death in the ordinary course of nature, for many of the witnesses in the case were older than they would be, if living. Moreover, this is not a case where the right depends upon the duration of one life only. Proof of death in such case must be followed by some evidence from which the jury may be allowed to infer that the deceased left no children or descendants. The law does not presume that a person "proved to be dead left no children or descendants," *Shriver* v. *State,* 65 Md. 278, 287; *Hammond's Lessee* v. *Inloes,* 4 Md. 138, 174. The evidence was sufficient to justify the

jury in finding that Jane Willis had two children born in wedlock. These children may have been alive at the time of the trial. If dead, they may have had descendants living, and before a presumption of the extinction of that line of descent could be indulged there ought to have been some foundation laid in proof of inquiry and some attempt to trace the missing persons.

4. Another assignment under this head is founded in an exception taken to the refusal of the court "to strike from the record the hearsay testimony of Frances Pleasants, as to Jane Willis' alleged children passing through Washington." In her direct examination this witness stated, without objection from the plaintiffs, that she had heard of two children of Jane Willis passing through Washington just as the Civil War began, on their way to Georgia as slaves. She was cross-examined at great length by plaintiff's counsel on this point, and it was made to appear that she heard the fact talked of at the house of Andrew Hanson. She was unable to name the persons who spoke of it. Counsel then moved the court to strike out the evidence "upon the ground that she says she heard it at Andrew Hanson's house, but does not know from whom she heard it." Passing by the manner and form in which the question is presented, it might be said that the evidence was inadmissible had its purpose been to prove that Jane Willis had issue. But as a circumstance discussed in the family, we think it admissible as tending to show that children, whose existence had otherwise been actually proved, had subsequently been heard of by their relations. That the information concerning the arrival of the children in Washington may have come from a person not related to any of the parties, by blood or marriage, does not impair the competency of the evidence. There is no rule of law that confines intelligence of an absentee to any particular class of persons. *Flynn* v. *Coffee*, 12 Allen, 133. However, if the evidence were incompetent, the refusal to exclude it would not justify

the reversal of the judgment; for under the opinion we have expressed as to the burden of proof that devolved upon plaintiffs, it could not have operated to their prejudice. The existence of the children having been proved, the plaintiffs had offered no evidence of their death or of facts that would reasonably raise a presumption of it.

2. As an admission of the defendant, Julia Hanson, plaintiffs read an affidavit made by her June 20, 1892, reciting that she was eighty-five years of age, and the widow of Andrew Hanson, and so forth; that there was no issue of the marriage, and Hanson had never before been married. It concluded as follows: "I also know that neither father, mother, sister or brother or other relative capable of inheriting his estate, except myself as his widow, who am the only legal and equitable owner of all the aforesaid real estate, [which was a different lot from that in this suit] which has always been inclosed and improved since my husband's death."

Defendant, over the objection of plaintiffs, was permitted to offer evidence, through a witness named Thornton, tending to show that he had written the affidavit at the request of one Sigmund Block, who represented that he had made a sale of the said lots to some parties, and wanted to have the title "fixed up" by such an affidavit, so that the sale could be closed and the money paid. The paper was drawn in accordance with Block's suggestion and signed by Julia Hanson, who could not read. Block carried off the paper, but the sale was never made. Julia Hanson testified substantially to the same effect.

The court was clearly right in permitting the defendant to explain the circumstances under which the affidavit had been made in order that the jury might determine the proper weight to be given to the facts so recited. 1 Greenleaf Ev., Sec. 108; 1 Wharton Ev., Sec. 259.

3. Several assignments of error are founded on exceptions taken to the evidence of Julia Hanson concerning conver-

sations between her and her husband. Having previously testified that Jane Willis had a child or children, she was permitted to say that her husband was very sick when the news came of the children passing through Washington; so sick that she would not disturb him. That about two months later, when he had recovered sufficiently, she told him of it, and he expressed his sorrow. She said further, that she had heard him speak of his mother, but never of his father. Had also heard him say that his mother's mother had been a white woman. The immateriality of the evidence relating to the presence of the two children in Washington has heretofore been suggested; and we do not see, nor has it been made to appear, how the interest of either party could have been affected by the statement as to the color of the grandmother. The sole ground of objection, however, was that the wife could not disclose communications made to her by her husband. In view of the change made in the rules of evidence by the act of Congress relating to the District of Columbia, the court did not err in overruling this objection. R. S. D. C., Secs. 876, 877.

Under the provisions of that act, the wife, in a suit against her involving her title to property, is at liberty, though not compellable, to disclose communications made to her during marriage by her husband. *Smith* v. *Cook* (present term), *ante*, p. 487; *Stickney* v. *Stickney*, 131 U. S. 227, 237; *Hopkins* v. *Grimshaw* (Supreme Court, U. S., January 15, 1897), 165 U. S. 342.

4. Other errors that may be considered together have been assigned on instructions both given and refused, in application to the evidence relating to the existence of descendants of the paternal grandfather of Andrew Hanson, who would, in such event, inherit to the exclusion of plaintiffs, who are descendants of the grandfather on the mother's side.

Besides the affidavit of the defendant, heretofore considered, and her answer to the bill in equity, that will be con-

sidered separately hereafter, there was no evidence introduced tending to show that the paternal grandfather had no descendant, other than Andrew Hanson, save that of certain witnesses related to him on the mother's side, who said that they had never heard of any. No other inquiry seems to have been made concerning them.

(1) Whilst, under all the circumstances, the evidence may have been sufficient to authorize the jury to indulge the presumption that the brothers and sisters of Andrew Hanson's father, if any, and their descendants, were dead, it was one of fact, and hence it was not error to refuse the instruction asked by the plaintiffs, that it was a presumption of law. *Blackburn* v. *Crawford,* 3 Wall. 175, 195; *Inhabitants of Hyde Park* v. *Inhabitants of Canton,* 130 Mass. 505, 509; 2 Wharton Ev., Sec. 1274.

(2) After that refusal the court gave the following instruction, as requested by the plaintiffs:

"If the jury find from the evidence that none of the family of Andrew Hanson ever heard of any brothers or sisters of Andrew Hanson's father, or issue of said brothers or sisters, they may presume that there never was such issue on his father's side."

In connection therewith the following was given at the defendant's request:

"The jury are instructed that they cannot presume that Andrew Hanson's father had neither a brother nor a sister because those claiming to be the second, third and fourth cousins of said Andrew Hanson on his mother's side never heard of such brother or sister, but they may consider such evidence in connection with other evidence in the case, and unless they find from all the evidence submitted to them that at the time of his, said Andrew Hanson's, death, there was living neither a brother nor a sister of the father of said Andrew Hanson nor any descendants of such brother or sister, they must find for the defendant."

Of his own motion the court then further charged the jury, in explanation of the foregoing, in these words:

"Those all taken together, gentlemen, upon this question of presumption, mean this: that from the mere fact that some of these distant relatives say they never heard of such brothers or sisters you cannot presume there were none, but you are to consider the evidence of the witnesses who are those distant relatives, and who say they never did hear of such brothers or sisters, with all the other evidence, and that if all the evidence taken together proves to your satisfaction that the relatives of Andrew Hanson never heard that his father had any brothers or sisters, you would be justified in assuming that he did not have any unless there is some evidence in the case which rebuts such presumption."

Plaintiff's instruction, as given, did not inform the jury who were included in the words "family of Andrew Hanson," as used therein. The court's explanatory charge cured that defect, as well as removed any injury that might have resulted to plaintiff from the instruction given at the request of the defendant.

Considering the minor importance of this issue, and the character of the testimony generally, we cannot perceive how any injury could have been done the plaintiffs by the qualification with which the charge concluded, namely, "unless there is some evidence in the case which rebuts such presumption." There was some evidence to the contrary in the affidavit and the paragraph of defendant's answer that had been read as admissions by her, though it may have been entitled to little weight.

5. The last assignment of error concerns so much of the court's charge as relates to the effect of the affidavit of Julia Hanson, hereinbefore mentioned, and a paragraph in her answer to the bill in equity, both of which were offered as evidence against her. The court charged that the evidence

had been offered as admissions by defendant that there were no heirs of the deceased Andrew Hanson; and that all that she had said upon the subject was to be taken and given such weight as it might be entitled to under all the facts and circumstances of the case.

(1) In so far as the affidavit is concerned, the question has been settled by what has been heretofore said in respect of the admissibility of the evidence tending to show the circumstances under which that affidavit had been procured from the aged and ignorant defendant.

(2) Both papers having been read by the plaintiffs as admissions of the defendant against her own interest, she was entitled to have all that she said, in immediate connection, considered by the jury; and the court did not err in the charge to that effect.    1 Greenleaf Ev., Sec. 201; 2 Wharton Ev., Sec. 1103.

(3) The record does not show that the answer of defendant, from which the plaintiffs read the paragraph, had been signed or sworn to by her.    But, assuming that it had been sworn to by her as "true to the best of her knowledge and belief," as is the practice, it was admissible as an admission merely.    It could not operate as an estoppel, and it would have been error to give the instruction to that effect asked by plaintiffs.    *Buzzard* v. *Houston*, 77 Tex. 436, 445; 1 Wharton Ev., Sec. 838; 1 Greenleaf Ev., Sec. 204.

(4) Moreover, the admission contained in the answer was of no importance whatever to the plaintiffs.    If capable of helping the case of either party, it was that of the defendant rather.    All that was admitted is, that "neither the father nor mother of Andrew Hanson are now living, nor are there living any brothers or sisters of said father or mother."

This must have been true in the ordinary course of nature.    The substantial question was, whether such brothers or sisters had ever existed, and whether they had descendants living at the time the suit was begun.    As to these, the answer proceeded, in the same sentence, "but as to whether

there are any issue living, of any such brothers or sisters, this defendant cannot answer with certainty, and as to these allegations she calls for strict proof." In respect of the sister of Andrew Hanson, and her issue, the paragraph proceeds with the positive assertion that "this defendant says she knows that said Andrew Hanson had a sister, one Jane Willis, a married woman, who died before said Andrew Hanson, leaving two children surviving her, and this defendant believes that said children or their issue are still living, and she denies that the complainants or the defendants other than herself are in any manner or degree entitled to the property described in the bill."

As said before, the plaintiffs could not read a part of a single sentence of which this paragraph of the answer consisted, and exclude the remainder from the consideration of the jury.

The charge of the court, taken as a whole, contains a fair and impartial presentation of the case to the jury, and after a careful consideration of the entire record, we find no reversible error. The judgment must, therefore, be affirmed with costs; and it is so ordered. *Affirmed.*

After the rendition of the foregoing opinion, counsel for appellants filed a petition for a rehearing upon the ground that the 24th and 25th and 29th assignments of error had not been passed upon by the court in its opinion. These assignments were stated in the petition to be as follows:

(1.) That the court below erred in instructing the jury that "unless they believe that at the time of Andrew Hanson's *death* there was neither a brother nor a sister of Andrew Hanson, nor any decendants of a brother or sister of Andrew Hanson, they must find for the defendant."

(2.) That the court below erred in instructing the jury that if they believed Jane Willis to be a married woman and left a child or children surviving her, then "they must find a verdict in favor of the defendant unless it has been proved that such child or children died without issue *before* the

10 Ct. App.—34

death of Andrew Hanson." ·(3.) That the court below also erred in instructing the jury that "they must believe from all the evidence that she (Jane Willis) *died without issue* before these complainants can get anything." Whereas it was contended by counsel that the instruction should have referred the failure of issue to the time ˙of the bringing of suit and not to the time of the death of Andrew Hanson or Jane Wilson, inasmuch as they might well have left issue at the time of their respective deaths and yet said issue have become extinct at the time of the bringing of the suit.

The court overruled the motion for a rehearing.